**CLOVER FARMS DAIRY; Harrisburg Dairies, Inc.; Ritchey's Dairy; Brookwood Farms; Greater Pittsburgh Dairy Industry Association; Carl Colteryahn Dairy, Inc.; Marburger Farm Dairy, Inc.; Schneider's Dairy; Taylor Milk Company; and Turner Dairy Farms, Inc., Plaintiffs,**

**v.**

**George BRUMBAUGH, Robert Derry and Paul O'Hop, Officially and in their individual capacities, Defendants.**

**Civ. A. No. 84–0556.**

United States District Court,
M.D. Pennsylvania.

April 20, 1984.

On Permanent Injunction May 9, 1984.

Donald Tortorice, Jack Mumford, Robert Kelly, Duane, Morris & Heckscher, Harrisburg, Pa., for plaintiffs.

John Knorr, Deputy Atty. Gen., Harrisburg, Pa., Dan Flaherty, Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

This court has before it a motion for a temporary restraining order to prevent the suspending of minimum price controls for low fat and skim milk. Notice of the motion was given to the named defendants and the Commonwealth of Pennsylvania.

The Pennsylvania Milk Marketing Board is an independent commission of the Commonwealth of Pennsylvania charged by the Milk Marketing Law with regulation of the milk industry pursuant to the provisions of said Act, with responsibility and power to supervise, investigate and regulate the entire milk industry of the Commonwealth of Pennsylvania including the authority to issue orders fixing prices of milk including low fat and skim milk. The Board's authority derives from the Act of April 28, 1937, P.L. 417 as amended, 31 P.S. § 700j–801 (1983). The Act, in pertinent part, provides:

> The Board shall ascertain, after a hearing in which all interested persons shall be given reasonable opportunity to be heard, the logical and reasonable milk marketing areas within the Commonwealth ... and shall ascertain and maintain such prices for milk in the respective milk marketing areas as will be most beneficial to the public interest, best to protect the milk industry of the Commonwealth and insure a sufficient quantity of pure and wholesome milk to inhabitants of the Commonwealth ...
>
> . . . .
>
> The Board may, on its own motion or upon application in writing from time alter, revise or amend an official order defining milk marketing areas or fixing prices to be charged or paid for milk. Before making, revising or amending any order defining milk marketing areas or fixing prices to be charged or paid for milk, the Board shall hold a hearing, after giving a reasonable opportunity to be heard to interested persons of whom the Board has notice ..., and, in case of any order affecting the public after giving reasonable notice thereof to the public in such newspaper or news papers as, in the judgment of the Board shall, after sufficient notice and publicity ...
>
> . . . .
>
> All provisions of all price fixing orders shall be presumed to be valid and the burden of proving any invalidity of any provisions thereof shall be upon the person asserting the same.

31 P.S. § 700j–801 (1983)

The Act of April 28, 1937, P.L. 417, as amended, 31 P.S. § 700j–802 (1983), in pertinent part, provides:

> The fixing of minimum wholesale or retail prices for skim milk ... shall be discretionary with the Board.

31 P.S. § 700j–802.

Findings of fact

1. Pursuant to official action and subsequent to notice and hearing, the Board issued general orders which fixed the minimum prices to be paid licensed dealers for nonfat and skim milk within the various

milk marketing areas of the Commonwealth.

2. At its regularly scheduled public meeting held on April 16, 1984, the Board discussed and dismissed petitions filed with the Board by and on behalf of the City of Pittsburgh and Mayor Richard S. Caliguiri, Lawson Milk Company, and the City of Erie requesting, in the alternative, that the Board suspend resale prices for low fat and skim milk or fix a price hearing during the month of April, 1984 limited to those products of Milk Marketing Board Area No. 5. The City of Pittsburgh also requested that the Board unilaterally suspend all minimum prices for non-whole milk products within Milk Marketing Board Area No. 5.

3. At the same public meeting on April 16, 1984, defendants, on their own motion and without notice or provision of an opportunity to be heard afforded to plaintiffs, "suspended" the provisions of general orders governing the prices to be paid dealers for low fat and skim milk, thus altering, revising or amending the official order fixing the prices to be paid for said categories of milk in five of the six milk marketing areas within the Commonwealth.

Discussion

In determining whether to grant a preliminary injunction, this court must weigh a number of factors. The major factors to be considered are: (1) a reasonable probability of eventual success in the litigation; (2) irreparable injury *pendente lite* if relief is not granted; when relevant (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. *Constructors Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978).

■ The plaintiffs' arguments on the merits are that they have a property right in the promulgated price fixing order and any change in the order must be accomplished with the requisite due process. *See* U.S. Const. amend. 5; U.S. Const. amend.

14. The United States Supreme Court has recognized that persons may have protectible property rights in entitlements which flow from a government to certain groups in our society. *Goldberg v. Kelly*, 397 U.S. 254, 262 n. 8, 90 S.Ct. 1011, 1017 n. 8, 25 L.Ed.2d 287 (1970). The Pennsylvania minimum pricing program is like an indirect entitlement and would appear to be a property right. The defendants argue that the plaintiffs do not have a property right in the continued existence of minimum prices. In support of this proposition, the defendants rely on *Lily Penn Food Stores, Inc. v. Commonwealth of Pennsylvania*, No. 1399 C.D.1982 at 2 (filed Apr. 9, 1984) (denying reargument); but *see Brookwood Farms v. Milk Marketing Board*, 8 Pa. Commw.Ct. 511, 304 A.2d 510, 515 (1973). This court agrees that the plaintiffs have no property right in having prices fixed; however, once the prices are fixed, the persons having the right must receive minimum procedural due process before the right can be taken away. *Id.* 397 U.S. at 270–71, 90 S.Ct. at 1021–22. *See Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The state statute sets forth a very basic and minimum due process procedure by calling for notice and an opportunity to be heard. 31 P.S. 700j–801. In this particular case, the right to notice and a hearing appears to be equivalent to what the fourteenth amendment requires. *See* 397 U.S. at 263–66, 90 S.Ct. at 1018–19. The plaintiffs would seem to have a reasonable probability of eventual success on the merits.

The irreparable injury to the plaintiffs would appear to be that, once the pricing structure is removed, they would lose the property right which they have in the minimum price structure. This court can see no obvious way in which the price structure once removed can be reinstated without much dislocation in the dairy industry. The plaintiffs also have no parties from whom damages might be collected, even if damages could be calculated.[1] The loss of the property right would be irreparable.

---

**1.** Because the entitlement is indirect, the calculation of damages from its removal would not be subject to simple calculation.

The potential injury to third parties, if the Temporary Restraining Order is granted, would not be sufficient to outweigh the potential injury to the plaintiffs. Whatever expenditures some dairy retailers may have made in preparation for the change in the pricing policy is minimal in comparison to the losses which may be suffered by the remainder of the dairy industry if the minimum prices are removed without due process. Compare *Empire Kosher Poultry, Inc. v. Commonwealth of Pennsylvania,* No. 84–0196 at 7–8 (M.D.Pa. Feb. 15, 1984) (the possible spread of avian flu could destroy multimillion dollar poultry industry).

The last element to be considered by this court is the question of the public interest. The legislature of the Commonwealth stated its purpose in passing the Milk Control Law of 1937 as follows:

In the exercise of the police power of the Commonwealth, it is hereby declared that the production, transportation, manufacture, processing, storage, distribution, and sale of milk in the Commonwealth is a business affecting the public health and affected with a public interest, and it is hereby declared that this act shall be and is hereby enacted for the purpose of regulating and controlling the milk industry in this Commonwealth, for the protection of the public health and welfare and for the prevention of fraud.

31 P.S. § 700j–101.

This court sees no reason to conclude that the public interest would be served by allowing the notice and hearing provisions of the act to be circumvented. Any initial benefit resulting from lower prices might well be greatly outweighed by the longer term damage the public would suffer if the Commonwealth's regulation of the milk industry was undermined. The public interest is best served by maintaining the status quo until the notice and hearing provision have been complied with by the Board.

Since this court has decided to grant the Temporary Restraining Order, the issue of whether a bond will have to be posted must be addressed. Fed.R.Civ.P. 65(c). No bond is required when the *restrained party* shows no likelihood of harm. *Powelton Civic Home Owners Assoc. v. Department of Housing & Urban Development,* 284 F.Supp. 809, 814–15, 840 (E.D.Pa.1968). No bond will be required.

## ON PERMANENT INJUNCTION

This is an action to enjoin the Pennsylvania Milk Marketing Board (the Board) from altering minimum prices for skim and low-fat milk without providing due process. This is *not* an action relating to the merits of whether Pennsylvania should regulate the milk industry. Plaintiffs are a group of milk dealers, and the defendants are the members of the Board. The claim is founded on the fourteenth amendment's Due Process Clause, with 42 U.S.C. § 1983 as the remedial vehicle. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343.

The Pennsylvania Milk Marketing Board is an independent commission of the Commonwealth of Pennsylvania charged by the Milk Marketing Law with regulation of the milk industry pursuant to the provisions of said Act, with responsibility and power to supervise, investigate and regulate the entire milk industry of the Commonwealth of Pennsylvania, including the authority to issue orders fixing prices of milk, including lowfat and skim milk. The Board's authority derives from the Act of April 28, 1937, P.L. 471 as amended, 31 P.S. § 700j–801 (1983) *et seq.*

The parties have entered into a stipulation of facts filed on April 30, 1984 and supplemented at the hearing on the permanent injunction. There is no reason to repeat all the facts except in summary. This court will adopt the stipulated facts as its findings of facts.

Pursuant to official action and subsequent to notice and hearing, the Board issued general orders Nos. A–846, A–844A, A–835, A–843 and A–845 which fixed the minimum prices to be paid licensed dealers for lowfat and skim milk within the various milk marketing areas of the Commonwealth involved in these proceedings. At its regularly scheduled public meeting held

on April 16, 1984, the Board discussed and dismissed petitions filed on behalf of the City of Pittsburgh and Mayor Richard S. Caliguiri, Lawson Milk Company, and the City of Erie requesting, in the alternative, that the Board suspend resale prices for lowfat and skim milk or fix a price hearing during the month of April, 1984 limited to those products of Milk Marketing Board Area No. 5. The City of Pittsburgh also · requested that the Board unilaterally suspend all minimum prices for non-whole milk products within Milk Marketing Board Area No. 5. At the same public meeting on April 16, 1984, the defendants, on their own motion and without any discussion on the Board's motion, "suspended" the provisions of general orders governing the prices to be paid dealers for lowfat and skim milk, thus altering, revising or amending the official order fixing the prices to be paid for said categories of milk in five of the six milk marketing areas within the Commonwealth.[1]

The issues in the instant case are:

1. Do the plaintiffs have a protected interest in properly established minimum milk prices?

2. If such a protected interest exists, must minimum due process as provided in the United States Constitution be afforded to the plaintiffs before the minimum prices are dispensed with by the Board?

3. Was the requisite due process provided before the prices were altered on April 16, 1984?

4. If a protected interest exists and the requisite due process was not provided, are the potential remedies at law inadequate because the plaintiffs' damage is irreparable or multiple suits would result?

This court must also consider in its analysis the following factors:

1. If all the above is established, this court must balance the potential injury of the plaintiffs against the potential injury

which would be sustained by the defendants.

2. This court's balancing of interests must also look to the public interest.

3. In deciding whether to issue an injunction, this court can also consider the actions of the applicant such as bad faith or delay.

The defendants urge this court to abstain from deciding this matter under the doctrine announced in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention is not proper when, among other things, the state law is clear on its face or has been authoritatively decided by the state courts. *D'Iorio v. County of Delaware*, 592 F.2d 681, 686 (3d Cir.1978). The only issue of state law in this case which might raise a question of abstention is whether the plaintiffs have an interest in the fixed prices once they are established.

The only authority questioning whether such a property right exists is in an unreported opinion by the Commonwealth Court. *Lily Penn Food Stores, Inc. v. Commonwealth of Pennsylvania,* 1399 C.D.1982 (Apr. 9, 1984) (denial of petition for rehearing). Judge Craig, writing for the court, said:

> We find no merit in Rosenberger's due process argument because it has no property right in the maintenance of minimum resale prices for lowfat and skim milk, given our determination in *Lily Penn* that the setting of those prices is discretionary with the board.

The statement is unsupported by citation and is unreported. The precedential value of the opinion is negligible. *See* 210 Pa. Code, Part II, Internal Operating Procedures, § 67.15 of the Commonwealth Court.

The value of the conclusion of no property right in the minimum prices is undercut by the decision in the primary opinion *Lily Penn Food Stores, Inc. v. Commonwealth of Pennsylvania,* —— Pa.Cmwlth. ——, 472

---

**1.** The Pennsylvania Commonwealth Court had already suspended the minimum prices for lowfat and skim milk in Area 1. *Lily·Penn Food*

*Stores, Inc. v. Commonwealth, Milk Marketing Board,* —— Pa.Cmwlth. ——, 472 A.2d 715 (1984).

A.2d 715 (1984). The discretion of the Board referred to in the February 13, 1984 opinion is the discretion to set prices based on the evidence presented to it. *Id.* at ——, 472 A.2d at 719. The Board's discretion to set prices based on the evidence is not before this court. The only question in the instant case is whether the Board acted arbitrarily or capriciously by not having an adequate hearing; the obvious conclusion being that if there is no hearing there is no evidence upon which the Board may exercise its discretion. The conclusion is perfectly consistent with the *Lily Penn* opinion of February 13, 1984.

■ Other than the *Lily Penn* unreported opinion of April 9, 1984, the Pennsylvania courts have consistently insisted on due process before the Board acts to alter, revise or amend prices. Due process is necessary only if a protected interest has been found. *Colteryahn Dairy v. Milk Control Commission,* 332 Pa. 15, 1 A.2d 775 (1938); *Brookwood Farms v. Milk Marketing Board,* 8 Pa.Commw.Ct. 511, 304 A.2d 510 (1973); *Meadow Gold Dairies v. Milk Control Commission,* 61 Dauph. 25, 70 Pa. D & C 223 (1950) (sitting as Commonwealth Court).

The Pennsylvania courts have sufficiently determined that a protectable interest exists in the minimum prices once they are set. This court will not abstain.

■ On the federal level, the plaintiffs allege that they have a protected interest in the minimum pricing structure once that structure is in place. The parties agree that the Board had fixed minimum prices in the areas in question prior to April 16, 1984. The disagreement arises over whether the established prices are merely a unilateral expectation or a protectable interest. The creation of a protectable interest can occur when state law creates the right "by placing substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983).

The question asked in *Olim* is whether "the decisionmaker is not 'required to base its decision on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or *for no reason at all.'"* 461 U.S. ——, 103 S.Ct. at 1747 (quoting *Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2466, 69 L.Ed.2d 158 (1981) (emphasis added). Can the Milk Marketing Board alter, revise or amend its previous orders fixing prices "for no reason at all?" The Pennsylvania Supreme Court and the Pennsylvania Legislature have already answered the question asked in *Olim.* The Supreme Court said:

> A general statement of findings of fact in support of, and the reasons for, each order is required to be filed with the order. *The same procedure is required for Changing or revising an order fixing prices as that in promulgating it.*

*City of Pittsburgh v. Milk Control Commission,* 86 Dauph. 123, 128 (1966) (sitting as Commonwealth Court) (emphasis in original) quoting *Colteryahn Sanitary Dairy v. Milk Control Commission,* 332 Pa. 15, 20 [1 A.2d 775] (1983).

Logically, the more drastic step of suspending price requires the same procedure as a change or revision.

The procedure set forth in section 801 of the Milk Marketing Act creates objective standards that the Board must consider. Section 801 says, in relevant part:

> The board *shall* ascertain, after a hearing in which all interested persons shall be given reasonable opportunity to be heard, the logical and reasonable milk marketing areas within the Commonwealth, shall describe the territorial extent thereof, shall designate such areas by name or number, and *shall* ascertain and maintain such prices for milk in the respective milk marketing areas as will be most beneficial to the public interest, best protect the milk industry of the Commonwealth and insure a sufficient quantity of pure and wholesome milk to inhabitants of the Commonwealth, having special regard to the health and welfare of children residing therein. (emphasis added)

The use of mandatory language has been a touchstone in determining whether a protected interest has been created. *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983).

The mandatory language in section 801 used in conjunction with certain substantive predicates *viz.* "protect the milk industry," "insure a sufficient quantity of pure and wholesome milk," or "having special regard to the health and welfare of children," leads to the conclusion that a protected interest was created by the Pennsylvania Legislature in the fixed minimum prices once they were established.[2]

Since a protected interest has been found, it must be determined whether minimum due process has been afforded. The defendants have stipulated that no due process was afforded the interested parties in areas 2, 3, 4 and 6. As to area 5, the defendants argue that the notice and hearing afforded on the petitions of Lawson Milk Company, the City of Pittsburgh and the City of Erie should be adequate to cover the Board's own motion suspending the minimum prices.

 The minimum requirements of due process have consistently been found to be related to the time, place and circumstances of the particular situation. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1975). The minimum requirements of due process are determined by weighing three (3) factors. The Court in *Mathews* characterizes the factors as follows:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In the present situation, the private interest involved is the potential effect of a suspension of milk prices for lowfat and skim milk on the milk producers, the ripple effects throughout the milk industry and the possible adverse impact on the public. *See* 424 U.S. at 339–43, 96 S.Ct. at 904–07 (impact of improper termination of social security benefits on the recipient and those dependent on the recipient). The potential severe consequences of an improper alteration in the minimum pricing structure for milk has been clearly set forth by the Pennsylvania Legislature in the preamble to the Milk Marketing Act. The alteration of the prices improperly may or may not have immediate or catastrophic impact on the particular plaintiffs involved, but the Pennsylvania Legislature has identified significant public interest in the fixed prices as a part of its effort to protect the Pennsylvania dairy industry.

The instant case is not like *Mathews* or *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969) where a significant but limited segment of the population had very direct interests to be protected. The due process protection sought by the plaintiffs in those cases would have required numerous and perhaps repeated notice, hearings and individual decisions. In the instant case, the interested parties may be numerous, but one proper hearing following notice per price alteration resolves the matter as to all interested parties. The administrative and fiscal burdens of giving prior notice and hearing are not great.

Under the facts and circumstances of the instant case, the due process of notice to interested parties and a hearing prior to the price alteration is the minimum acceptable under the United States Constitution.

The defendants argue that as to Area 5, notice that minimum prices for lowfat and skim milk would be considered at the Board meeting on April 16, 1984 was actually received by many interested parties; fur-

---

**2.** The Preamble to the Milk Marketing Act sets forth the Legislature's concerns in passing the Act. Much of the rationale set forth in the preamble is mirrored in the substantive predicates of section 801.

ther, that at that meeting there were discussions about a particular proposal to alter minimum prices. This, they argue, is sufficient for due process.

The testimony of C.J. Milroth concerning the hearing held on April 16, 1984 was that the Lawson, Erie and Pittsburgh petitions were discussed and then rejected. Mr. Derry, a member of the Board, moved to suspend immediately all minimum prices on lowfat and skim milk. Mr. Derry's motion was amended to include a provision for future hearings. Joint Exhibit 11; Minutes of April 16, 1984 meeting of Board at 2. Both the testimony of Milroth and the minutes of the meeting indicate that Derry's motion was not discussed by those present at the meeting.

The petitions of Lawson, Erie and Pittsburgh to suspend the milk prices in Area 5 were rejected. The motion by Derry to suspend in all areas was passed. The only logical conclusion which can be drawn from the facts is that the Board did not want the minimum prices in Area 5 suspended without a like suspension occurring in Areas 2, 3, 4 and 6. For the Board to now argue that they intended the prices in Area 5 to be suspended even if the suspensions in the other areas are set aside is inconsistent. The Board unanimously rejected the suspension of minimum prices in Area 5 alone. To now have this court arrive at a contrary result by declaring a portion of a Board action proper while setting aside the rest involves this court in the policy-making aspect of the Board's authority. Such an action is beyond this court's scope of review. *See Lily Penn Food Stores, Inc. v. Commonwealth of Pennsylvania,* —— Pa. Cmwlth. at —— ——, 472 A.2d at 718–719 (1984).

The reality of the situation is that the Board's motion to suspend minimum prices in Areas 2, 3, 4, 6 and 5 was not discussed. The discussions concerning the petitions of Lawson, Erie and Pittsburgh cannot be bootstrapped into a hearing on the Board's own motion. The hearing held on April 16, 1984 was not sufficient due process even as to Area 5. The plaintiffs were not provid-

ed minimum due process before the minimum prices for lowfat and skim milk were suspended pursuant to Official General Order No. C–51 issued on April 23, 1984.

The remaining items to be considered before a permanent injunction can be issued do not require much additional discussion. The plaintiffs' irreparable injury is that, once the pricing structure is removed, they have lost their interest and have no way to recover it. An action for damages would not aid them because they do not have anyone to sue. The Board is likely immune. The competitors who lower their prices would be acting in compliance with the Board's order and not be subject to suit. The plaintiffs have no way to reclaim their interest once it is lost. Their damage is irreparable.

The balancing of the interests of the parties and the public was decided by the state legislature. The legislature declared the public interest to be in the orderly control of the processes of milk production, marketing and distribution for the benefit of the public health and safety. *See* Preamble to Milk Marketing Law 31 P.S. §§ 700j–101 *et seq.*

This court sees no reason to conclude that the public interest would be served by allowing the notice and hearing provisions of the Act to be circumvented. The public interest is best served by requiring the Board to provide minimum due process to the interested parties prior to an alteration in the minimum price for lowfat and skim milk. This court expresses no opinion as to whether Pennsylvania should or should not regulate the milk industry.

This court finds no evidence of bad faith or delay on the part of the plaintiffs.