370 A.2d 685

**PENNSYLVANIA COAL MINING ASSOCIA-
TION et al., Appellants,**

v.

**INSURANCE DEPARTMENT of the Commonwealth of Penn-
sylvania and William J. Sheppard, Insurance
Commissioner, Appellees,**

**Coal Mine Compensation Rating Bureau of
Pennsylvania, Intervenor.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1976.

Decided Feb. 28, 1977.

Petition for Clarification Denied

April 5, 1977.

438

440

441

John M. Elliott, Steven L. Friedman, Constance B. Foster, Dilworth, Paxson, Kalish & Levy, Philadelphia, for appellants.

Linda S. Lichtman, Deputy Atty. Gen., Guy J. Depasquale, Harrisburg, for appellees.

Thomas R. Balaban, Shaffer, Calkins & Balaban, Harrisburg, Wilbur S. Legg, Spencer LeRoy, Lord, Bissell & Brook, Chicago, Ill., Harold R. Schmidt, Pittsburgh, for intervenor, Coal Mine Compensation Rating Bureau of Pa.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In Pennsylvania, coal mining companies are required to purchase insurance coverage for black lung benefits as a condition of doing business.[1] The rates charged for such insurance are subject to regulation by the appellee Pennsylvania Insurance Department. On August 1, 1975, a rate increase became effective without notice to the coal mining companies which purchase black lung in-

---

1. See Federal Coal Mine Health and Safety Act of 1969, § 423, as amended, 30 U.S.C.A. § 933 (Supp.1976); Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, § 305, as amended, 77 P.S. § 501 (Supp.1976). These statutes make provision for self-insurance and the largest coal mining companies in the state are self-insured. The coal mining companies represented in this action, however, have not been able to qualify for self-insurance. Therefore these statutes, as a practical matter, require these companies to purchase insurance.

surance. Today we must decide whether due process is satisfied by procedures which allow rate increases to go into effect without prior notice or an opportunity to present objections. We conclude that the coal mining companies have been denied due process, and set aside the 1975 rate increases.

## I

The procedure for the regulation of insurance rates for workmen's compensation coverage in the Commonwealth is set forth in the Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, § 654, as amended, 40 P.S. § 814 (Supp.1976). Insurance rates are proposed annually by a rating bureau subject to supervision and examination by the Insurance Commissioner. Proposed rates for black lung coverage are proposed by the intervenor Coal Mine Compensation Rating Bureau of Pennsylvania [Rating Bureau], an organization composed of the insurance carriers which provide black lung coverage. No insurance policy may issue except in accordance with the rates proposed by the Rating Bureau, as modified, amended or approved by the Insurance Commissioner. Under this regulatory scheme, the Insurance Commissioner reviews the rates to determine if they are excessive or discriminatory. After proposed rates are filed and before they become effective, the Insurance Commissioner may hold hearings on the proposed rates, in which insured parties whose rates would increase are entitled to participate.[2]

Until December 1974, no rate proposal could become effective without the prior approval of the Insurance Commissioner. At that time, the Legislature adopted an amendment which provided that, after a waiting period of thirty days, a rate proposal shall be "deemed" ap-

2. See Attorney General Opinion No. 74–18, 4 Pa.Bulletin 786 (1974).

proved unless disapproved or modified by the Commissioner.[3]

On June 27, 1975, the Rating Bureau submitted proposed rates for black lung insurance for the year beginning July 1, 1975 [1975 rates]. The Rating Bureau proposed a rate of $27.31 per $100 of payroll, an increase over the $18.54 rate approved for 1974 and the $13.09 rate in effect for 1973.[4] Appellants, the Pennsylvania Coal Mining Association and six member coal mining companies [Association], were given no notice of the rate filing.

On July 16, 1975, the Association, having learned of the rate filing, requested a copy of the proposed rates and stated that it "may well have objections to the filing and may seek to intervene in the proceedings." Copies of the filing were hand delivered to the Association on July 18. The Association was not informed that the rates would be deemed effective unless the Insurance Commissioner took action within thirty days after the proposed rates were submitted.[5]

On August 11, 1975, the Association petitioned to intervene in the rate hearing on the 1975 rates. The Association subsequently was informed that the 1975 rates had been deemed into effect. On August 21, 1975, the Association wrote the Insurance Commissioner, reciting that the Association did not receive notice that the 1975 rates had been submitted, that when the Association requested a copy of the proposed rates it expressed its

3. Pennsylvania Workmen's Compensation Act, Act of December 5, 1974, P.L. 782, § 16, 40 P.S. § 814 note (Supp.1976). The Insurance Commissioner is empowered to extend the waiting period for another thirty days.

4. Appellants challenged the rates proposed in 1974, and the 1974 rates were not approved until July 22, 1975. Thus, the 1973 rates were still in effect when the Rating Bureau submitted its 1975 rates.

5. Apparently, the Insurance Department itself was not aware that, under the new amendment, the 1975 rates could be deemed into effect without its approval.

objection to any rate increase, and that it had petitioned to intervene in proceedings for review of the 1975 rates. The Association requested the Insurance Commissioner to reject or suspend the 1975 rate filing, so that a hearing could be held in which the Association could participate. The Insurance Commissioner responded on September 5, explaining the basis for the 1975 rate increase, and denying the Association's petition to intervene because the rates had already been deemed into effect.

The Association appealed to the Commonwealth Court. The Commonwealth Court held that the Association was not entitled to notice and a hearing on the proposed rates before they became effective, and dismissed the appeal.[6] This Court granted the Association's petition for allowance of an appeal,[7] and issued a writ of supersedeas to prevent the 1975 rates from becoming effective until we resolved the Association's claims.

## II

In order to determine the requirements of procedural due process, this Court must first determine if the inter-

---

**6.** In the Commonwealth Court the Insurance Department moved to quash the appeal as not having been taken from an "adjudication" and because the Association had not exhausted its administrative remedies. 40 P.S. § 814 (Supp.1976) provides a procedure by which a party aggrieved by a rate change can have that rate change reviewed after it becomes effective. The Commonwealth Court held that the Association could not appeal the 1975 rates, because the Association was not a party to the proceedings by which rates were deemed into effect, and that any due process rights the Association might have could be protected by following the procedures outlined in 40 P.S. § 814. *Commonwealth, Insurance Dep't v. Pennsylvania Coal Mining Ass'n*, 25 Pa.Cmwlth. 3, 358 A.2d 745 (1976). Both conclusions were based on the premise that the Association had no right to notice and an opportunity to be heard before the rates became effective, however. The Commonwealth Court recognized that if the Association had a constitutional right to such notice, it could appeal from the original rate proceedings.

**7.** We hear this case pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P. S. § 211.204(a) (Supp.1976).

est asserted by the Association is protected by the due process clause.[8] Next, we must balance the interests of the individual in procedural protections against the interests of the government in proceeding without protections to determine what due process requires. See *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Conestoga National Bank v. Patterson*, 442 Pa. 289, 272 A.2d 6 (1971).

■ A. The Association's interest in the rates its members are required to pay for black lung insurance does not involve any property rights under traditional concepts of property law. The absence of such traditional property rights, however, does not mean that the Association has no "property" interest subject to due process protections. The expanding participation of the government in our economy has meant that many forms of benefits and privileges extended by the government are at least as important to the individual as traditional forms of property. The role of the government in providing such benefits, and the power that inheres in this role, have made it necessary to provide safeguards to preserve the independent status of the individual. See Reich, The New Property, 73 Yale L.J. 733 (1964). Thus, the Association's interest in the rates set for black lung insurance cannot be dismissed as a mere privilege. As Mr. Justice Blackmun recently wrote for the United States Supreme Court: "this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' " *Graham v. Richardson*, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1972); accord *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

8. U.S.Const. amend. XIV. See generally *Norvell Estate*, 415 Pa. 427, 203 A.2d 538 (1964), cert. denied, 380 U.S. 913, 85 S.Ct. 900, 13 L.Ed.2d 799 (1965). See also Pa.Const. art. V, § 9.

■ Similarly, we cannot conclude that the Association's interest is not within the protections of the due process clause simply because the Pennsylvania Workmen's Compensation Act,[9] and the Insurance Company Law of 1921 [10] do not expressly create any entitlement in the Association to the rates it must pay for insurance. See *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972). To require an explicit "statutory entitlement" before due process safeguards attach is to invite a return to the discredited rights/privileges distinction, because it bases an individual's due process rights on the label a statute attaches to the interest. See *Bishop v. Wood*, 426 U.S. 341, 353 n. 4, 96 S.Ct. 2074, 2082 n. 4, 48 L.Ed.2d 684 (1976) (Brennan, J., dissenting).[11] At worst, such an analysis becomes circular: the determination that there is no "statutory entitlement" stemming from the statute's failure to provide any procedural protections before the individual's interest can be taken away. See *Bishop v. Wood*, 426 U.S. 341, 355, 96 S.Ct. 2074, 2083, 48 L.Ed.2d 684 (1976) (White, J., dissenting). See generally Tushnet, The Newer Property, 1975 Sup.Ct.Rev. 261, 267–73.

■ Whether an interest in benefits or protections provided by the government is entitled to due process

9.  Act of June 2, 1915, P.L. 736, §§ 101 et seq., as amended, 77 P. S. §§ 1 et seq. (Supp.1976).

10.  Act of May 17, 1921, P.L. 682, §§ 1 et seq., as amended, 40 P. S. §§ 341 et seq. (Supp.1976).

11.  The majority in *Bishop* held that the determination whether a public employee has a "property" interest within the protection of the due process clause of the fourteenth amendment is to be determined by reference to state law. This does not require that a state statute explicitly create an entitlement to the interest, however. If, in our interpretation of state law, an individual has a "liberty" or "property" interest, the due process clause of the fourteenth amendment applies. See Brennan, State Constitution and the Protection of Individual Rights, 90 Harv.L.Rev. 489, 503 (1977).

protections depends on the nature of the government activity and the citizen's dependency and reliance on that activity. The Supreme Court, 1975 Term, 90 Harv.L. Rev. 86–104. See *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Conestoga National Bank v. Patterson*, 442 Pa. 289, 275 A.2d 6 (1971).[12] See generally, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.").

The government activity here is regulation of insurance rates. The dependency of the Association on such regulation of insurance is clear. The coal mining companies which make up the Association are required to purchase black lung insurance to do business in Pennsylvania, and the rates that they must pay for such insurance forms a major part of their payroll costs. If the costs they must pay for insurance are excessive, they may not be able to compete with coal mining companies in other states, and thus may not be able to continue in business.

While designed to prevent excessive rates, the procedure for setting insurance rates adds to the Association's dependency on the Insurance Department. Although it is subject to regulation by the Department, the Rating Bureau, which proposes rates annually, is essentially a private body. If the rate proposals made by the Rating Bureau become effective, these are the only rates at

12. In *Conestoga National Bank* we recognized that due process protections are necessary in order to preserve the right to appeal. Pa.Const. art. V, § 9. Our conclusion that property rights were involved, and the requirements of procedural due process were applicable, was based on an analysis of the purposes of the regulatory scheme in question and its impact on the parties claiming a right to due process. Of course, a citizen's "liberty" interest, in avoiding government infringement on his freedoms, also invokes due process protections.

which insurance may be sold.[13]   The Association cannot depend on competition to bring down excessive insurance rates.  Thus, the members of the Association are dependent on the Insurance Commissioner to review insurance rates before they are deemed into effect.  Without this review, they may be forced to pay excessive rates which adversely affect their ability to compete and remain in business.

The purposes of the regulatory scheme also make it clear that the Association is justified in relying on the Insurance Commissioner to review proposed rates before they take effect to make sure that the rates are reasonable.  Cf. *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir. 1974) (tenants of federally financed low-cost housing have legitimate expectation, based on statute providing funding, so as to entitle them to procedural due process before rent increase).

■   We conclude that the requirement that the coal mining companies purchase insurance, the importance of the insurance rates to their ability to remain in business, and the purposes of regulation by the Insurance Department create the combination of dependency and reliance which makes applicable the protections of procedural due process.

■   B.   We must next determine what procedures due process requires.  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).  See generally Friendly, Some Kind of a Hearing, 123 U.Pa. L.Rev. 1267 (1975).  "[C]onsideration of what proce-

---

**13.**   See 40 P.S. § 814 (Supp.1976) (no insurance policy shall be issued ". . . except in accordance with the . . . premium rates . . . proposed by the rating bureau . . . as modified, amended or approved by the Insurance Commissioner . . . .").

dures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961). We must determine the private interest at stake, the value of any additional procedural safeguards, and the government's interest in proceeding without providing such procedures. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In deciding what procedures due process requires, we should consider the protections provided by procedures already available. Id.; *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Here, once insurance rates become effective, the Association is entitled to review of the Insurance Commissioner's decision:

> "Any person . . . aggrieved by [an order approving a rate change] may obtain a review thereof before the Insurance Commissioner, and if still aggrieved by such reviewed . . . rate . . . may obtain a further review thereof in the [Commonwealth Court] . . . .. The commencement of proceedings under this section shall not, unless specifically ordered by the court, operate as a stay of the Insurance Commissioner's order."

40 P.S. § 814 (Supp.1976).

██ While these procedures provide for a full hearing after rates take effect, we conclude that they are inadequate. The increased rates remain in effect during such review, which may go on for over a year. When insurance rates are deemed into effect, the rates set are those proposed by the Rating Bureau, a private body. There is a strong policy against delegating power to regulate prices to a private body. See *Olin Mathieson*

*Chemical Corp. v. White Cross Stores,* 414 Pa. 95, 99, 199 A.2d 266, 268 (1964) ("The vesting of a discretionary regulatory power over prices, rates or wages, in private persons violates the essential concept of a democratic society and is constitutionally invalid."). See generally *Hetherington v. McHale,* 458 Pa. 479, 329 A.2d 250 (1974) (plurality opinion). Where proposals by a private party must be reviewed and approved by a regulatory agency before they become effective, there is no unconstitutional delegation. The possibility of an arbitrary disregard of individual interests when the recommendations of a private body are deemed into effect without the specific approval of a public official, however, demands greater procedural protection than due process might otherwise require. See K. Davis, Administrative Law Treatise § 7.00–10 at 269 (Supp.1976) (whether a hearing is required before action is taken depends on the effectiveness of the procedures available before such action, even when full hearing is available afterwards).

■■■ We also recognize a preference for procedures which provide a citizen with protections before he is deprived of an interest protected by due process. See generally id. § 700–8, at 264. A citizen is best protected against arbitrary action when he is given an opportunity to challenge that action before it is taken. Not only is it easier to persuade the government to reconsider a decision before it is carried out, but the citizen is also protected against infringement on his interest for the period during which his challenge takes place. Even if the citizen prevails in proceedings which take place after government action is taken, he still has suffered an infringement on his interests during the period required for those proceedings. Thus, procedural protection should be given before the government takes action which threatens to deprive a citizen of an interest, unless important governmental interests, or the preservation of the interests of others, require otherwise. See *Boddie v.*

*Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L. Ed.2d 113 (1971). The root requirement of due process is that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Id. (emphasis in original) (footnotes omitted). But see *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed. 2d 406 (1975) (plurality opinion).

We conclude that the coal mining companies which are required to purchase such insurance should have some opportunity to alert the Insurance Commissioner to reasons why the rates proposed by the Rating Bureau should not be deemed into effect. This requires that they be provided reasonable notice of the proposed rates, and an opportunity to present written views on why they should not be deemed into effect. Without such safeguards, they do not have adequate protection against being forced to pay arbitrary and excessive rates.

Notice is the most basic requirement of due process. See *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Without notice, the Association cannot take advantage of any of the other procedural safeguards made available to it. "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) quoting *Baldwin v. Hale,* 68 U.S. (1 Wall.) 223, 233, 17 L.Ed. 531 (1864).

Notice should be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections. The form of the notice required depends on what is reasonable, considering the interests at stake and

the burdens of providing notice. *Goss v. Lopez*, 419 U.S. at 579, 95 S.Ct. at 738–39 ("the timing and the content of the notice . . . will depend on appropriate accommodation of the competing interest involved").[14] At a minimum, the coal mining companies must be notified (1) that proposed rates have been filed; (2) where copies of the proposed rates can be obtained; (3) that the rates will be deemed into effect unless action is taken by the Insurance Commissioner before a certain date; and (4) that any interested person may present written objections to the proposed rates.

The Insurance Department argues that it would be unduly burdensome, if not impossible, to provide individual notice to each insured. The parties have agreed, however, that publication of rate filings in the *Pennsylvania Bulletin* will provide adequate notice. The Insurance Department does not assert that this will be unduly burdensome, and in fact, has undertaken voluntarily to provide such notice for future rate filings.[15]

■ We also conclude that the coal mining companies should be given a reasonable opportunity to present written objections to rates proposed by the Rating Bureau. This opportunity is necessary to enable them to present to the Insurance Commissioner any reasons why

---

14. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted). Notice must be
". . . reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such a nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied."

15. This does not moot the present case, as the Association is contending that the 1975 rates should have been set aside or suspended because they were deemed into effect without proper notice. The Insurance Department's action only affects future rate filings.

rate increases should not be allowed, or why a hearing should be held before rates become effective. Cf. *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir. 1974) (tenants of federally subsidized low-income housing are entitled to notice of proposed rent increases and the opportunity to present written objections).

We do not believe, however, that due process requires that the Association receive a full hearing before rates can become effective.[16] While oral proceedings may be necessary for determinations likely to turn on witness credibility, written submissions may be adequate when economic or statistical questions are at issue. See *Mathews v. Eldridge,* 424 U.S. 319, 342, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976); Friendly, Some Kind of a Hearing, 123 U.Pa.L.Rev. 1267, 1281–85 (1975). Moreover, unlike the opportunity to present written objections, a full hearing would entail extended delay, during which time the insurance carriers may be deprived of their interest in receiving adequate premiums. The opportunity to recover any excessive rates paid, after proceedings pursuant to 40 P.S. § 814 (Supp.1976), in addition to notice and an opportunity to present written objections before the rates become effective, satisfies procedural due process. Cf. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (existing

---

16. The Association also claims that the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, § 31, 71 P.S. § 1710.31 (1962) entitled it to a hearing before insurance rates can become effective. This claim is without merit. This section is applicable only to parties to an administrative proceeding. The Association was not named as a party, and the Association does not have a right to intervene as a party to rate increase proceedings if the Insurance Commissioner decides to allow the proposed rates to be deemed into effect without a hearing. The Association's rights are limited to notice and an opportunity to present written objections. See generally *Office of Communication of United Church of Christ v. FCC,* 123 U.S.App.D.C. 328, 359 F.2d 944 (1966) (FCC must be accorded broad discretion in establishing rules for public participation in administrative hearings).

procedures, which include notice and an opportunity to present written objections before termination, and a full hearing after termination, adequately protect an individual's interest in disability benefits); *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483, (9th Cir. 1974) (because of potential delay, full hearing before rent increases become effective is not required).

## III

The Association did not receive adequate notice of the proposed rates, nor was it given an opportunity to present written objections before the 1975 rates were deemed into effect.[17] Therefore, the rates should be set aside. The rates should not have been deemed into effect without provision for notice that the rates had been submitted and for an opportunity to present written objections to the proposed rates.[18]

17. The Association did become aware of the proposed rates, and was given a copy of the filing. This did not provide adequate notice, however, as the Association was not informed that the rates could be deemed into effect without review by the Insurance Department. Thus, the Association was not given any opportunity to submit written objections before the rates were deemed into effect. In the circumstances of this case, it cannot be contended that the Association should have known that the rates could be deemed into effect. Indeed, the Insurance Department's brief states that the Department itself was not aware of the amendment which made it possible for rates to be deemed into effect.

The Insurance Department contends this Amendment, Pennsylvania Workmen's Compensation Act, Act of December 5, 1974, P.L. 782, § 16, 40 P.S. § 814 note (Supp.1974), violates Pa.Const. art. III, § 3 because it has a misleading title. This claim was not raised before the Commonwealth Court and will not be considered here. See Pa.R.A.P. 302(a); *Commonwealth v. Piper,* 458 Pa. 307, 311, 328 A.2d 845, 847 (1974).

18. The Rating Bureau contends that the Commissioner's letter of September 5, 1975, did not constitute an adjudication. We agree that the letter did not constitute an adjudication within the meaning of the Administrative Agency Law, 71 P.S. §§ 1710.1 et seq. (1962). The general rule of administrative law is that denial of a motion to reopen is not subject to judicial review. *SEC v. Loui-*

The order of the Commonwealth Court is reversed, and the 1975 black lung insurance rates are set aside until approved by the Insurance Commissioner, or deemed into effect after proper notice and an opportunity to present written objections.

Mr. Justice NIX did not participate in the consideration or decision of this case.

EAGEN, J., concurs in the result.

POMEROY, J., concurs in the result.

*siana Public Service Comm'n.*, 353 U.S. 368, 77 S.Ct. 855, 1 L.Ed. 2d 897 (1957); *Martin Marietta Corp. v. FTC*, 376 F.2d 430 (7th Cir. 1967). In this case, however, the Association was denied the right to notice before the rates were deemed into effect. Its right to appeal that action, see Pa.Const. art. V, § 9, demands that it be allowed to appeal. In these circumstances, we recognize the Association's right to appeal from the Insurance Department's refusal to provide notice, and an opportunity to present objections, before a rate increase could become effective.

The Rating Bureau and the Insurance Department also contend that the appeal should be dismissed for failure to exhaust administrative remedies. This argument depends on the conclusion that the Association was not entitled to notice before the proposed rates could be deemed into effect. The Association's administrative remedies under 40 P.S. § 814 (Supp.1976) are available only after a rate becomes effective, and would not provide the Association with the right to notice before proposed rates are deemed into effect.