Pennsylvania Dental Association, Petitioner v. Commonwealth of Pennsylvania, Insurance Department; Medical Service Association of Pennsylvania, d/b/a Pennsylvania Blue Shield, Respondents.

Argued December 10, 1984, before Judges WIL-
LIAMS, JR., and PALLADINO, and Senior Judge BARBIERI,
sitting as a panel of three.

*John G. Milakovic,* with him, *Jeffrey W. Davis* and *Thomas A. Beckley, Beckley & Madden,* for petitioner.

*Beth C. Sheligo,* Assistant Counsel, with her, *Hannah Leavitt,* Chief of Litigation and *Paul Laskow,* Chief Counsel, for respondent, Insurance Department, Commonwealth of Pennsylvania.

*William H. Wood,* with him, *Thomas E. Wood, Keefer, Wood, Allen & Rahal,* for respondent, Pennsylvania Blue Shield.

OPINION BY SENIOR JUDGE BARBIERI, September 24, 1985:

The Pennsylvania Dental Association (PDA) filed a petition for review invoking this Court's original and appellate jurisdiction. The PDA seeks our review of the Insurance Department's (Department) approval of a rate increase requested by Pennsylvania Blue Shield (Blue Shield) and a writ of mandamus directing the Department to reverse or rescind its approval of Blue Shield's request for a rate increase, to conduct a formal hearing as to Blue Shield's request, and to obtain and consider additional specific information regarding the request and the consequences of approving the request. In response, the Department and Blue Shield have filed preliminary objections and a motion to quash.

On December 22, 1983, Blue Shield submitted to the Department for approval its Filing No. 10-W-1983, pursuant to 40 Pa. C.S. §6329(a) governing rates and contracts of professional health services plan corporations. By that filing Blue Shield sought leave to adjust the "profiles" it uses to calculate payments to health service doctors[1] who provide services to Blue Shield subscribers. Blue Shield proposed to constrain the incremental increase resulting from the requested profile update by freezing one profile, or one measure of reimbursement, at the present level (based on 1981 charge data) and by placing a cap on another so that the incremental increase in benefit payout by Blue Shield to participating doctors would not exceed 5.5%.

The Department set a public hearing on Blue Shield's filing for February 7, 1984 and published notice thereof in the *Pennsylvania Bulletin* on January 7, 1984. The notice invited interested parties to submit comments, objections, and suggestions regarding the filing to the Department in writing. At the public hearing on February 7, 1984, representatives of the Department directed various questions regarding the filing to Blue Shield's representatives, and also entertained comments from other parties, including the PDA. At that hearing, the PDA urged the Department to compel the production of certain documents from Blue Shield, to convene a formal hearing, and to grant PDA formal status as an intervenor. The Department orally denied these requests.

On March 7, 1984, the Department approved Blue Shield's filing. This approval was effected by af-

---

[1] The definitions at 40 Pa. C.S. §6302 define "health service doctor" as "a doctor of dental surgery, doctor of medicine, doctor of optometry, doctor of osteopathy, doctor of podiatry, doctor of chiropratic or licensed physical therapist." Use of the term "doctor" in the ensuing paragraphs of this opinion shall by reference include all of the above.

fixing an "approved" stamp, together with the signature of the reviewing officer, to the original filing. No written decision was issued.

In its brief in opposition to the respondents' preliminary objections, the PDA asserts that, because the Department did not acquire and review economic data held by Blue Shield regarding the estimated rate of increase in actual doctors' charges, the estimated effect on premiums, and the estimated effect on participation rates, the Department failed in its statutory duty to arbitrate economic disputes between Blue Shield and the PDA members. The PDA asserts that, as a purchaser of a Blue Shield medical program, it has a vested property interest in assuring that payments to doctors are not inadequate so that there will be a sufficient number of participating doctors, and that the PDA's member-dentists have vested property interests in participating with Blue Shield under adequate, fair, and non-arbitrary payments terms. According to the PDA, those vested property interests entitled the PDA to greater procedural due process than it received. Thus, the PDA requests a writ of mandamus directing the Department to (1) reverse and/or rescind its approval of Blue Shield's request, (2) conduct a formal hearing as to Blue Shield's request, (3) obtain and consider additional specific information as to the rationale and effects of Blue Shield's suggested profile update, and (4) grant PDA's petition to intervene. The Department and Blue Shield have filed a preliminary objection in the nature of a demurrer averring that the PDA has not stated a cause of action upon which relief can be granted.

Preliminarily, we must point out that a mandamus action is an inappropriate vehicle to obtain rescission of a departmental decision. Such a request is more

appropriately addressed to our appellate jurisdiction. We will, however, consider the PDA's request for a writ directing the Department to convene a formal hearing at which the PDA would be granted intervenor status with concommitant power to request documents and other specific information.

It is a well-settled proposition that mandamus is an extraordinary writ which is available only to compel the performance of a ministerial act or a mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and the want of any other adequate and appropriate remedy. *Unger v. Hampton Township,* 437 Pa. 399, 263 A.2d 385 (1970).

To determine whether the PDA has a clear legal right to the remedy requested, we first examine the statute which governs approval of rates and contracts of professional health services plan corporations. Section 6329(b) of Title 40 of Pa. C.S. governing procedure upon submission of a proposed rate provides:

> (b) Every application for such approval shall be made to the department in writing and shall be subject to the provisions of subsections (c) through (f) of section 6102 of this title (relating to certification of hospital plan corporations), except that the department may substitute publication in the Pennsylvania Bulletin of notice of reasonable opportunity to submit written comments for publication of opportunity for hearing in any case where the right to an oral hearing is not conferred by the Constitution of the United States or the Constitution of Pennsylvania.

40 Pa. C.S. §6329(b).

The subsection on procedure, 40 Pa. C.S. §6102(e), referred to above provides:

(e) Procedure before Department.—For the purpose of enabling the department to make the finding or determination required by subsection (d) of this section, the department, by publication of notice in the Pennsylvania Bulletin, shall afford reasonable opportunity for hearing, which shall be public, and, before or after such hearing, it may make such inquiries, audits and investigations, and may require the submission of supplemental studies and information, as it may deem necessary or proper to enable it to reach a finding or determination. . . .

Thus, the statute which is controlling with regard to procedure, requires, at the most, an opportunity to present views at a public hearing, unless procedural due process requirements demand otherwise.

Procedural due process is a flexible and still developing area of the law. All courts agree: before an individual is deprived of his personal or property interests, some kind of hearing is required. For many years, the question of what kind of hearing was required in a particular instance was answered by determining whether the issue was one of adjudicative fact in which case a full trial-type hearing was believed necessary, or legislative fact in which case a substantially less formal procedure was believed sufficient. This approach long suffered from several significant defects; for instance, adjudicative issues are not always easily distinguished from legislative issues. Also, a trial-type hearing is not always mandatory in every instance of adjudication, and more than notice and comment procedures may be necessary at times where there is no adjudication.

At the federal level, a balancing approach has evolved. The U.S. Supreme Court in *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886 (1961)

stated that "[c]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id.* at 895. That approach was utilized by our Supreme Court in *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 370 A.2d 685 (1977) which the PDA cites in support of its request for a writ of mandamus.

In that case, proposed rates for black lung coverage became effective without notice to coal mining companies which are required to purchase black lung insurance. Under the applicable regulatory scheme, rates, proposed by a rating bureau, could be deemed approved unless the Insurance Commissioner took action within thirty days after the proposed rates were submitted. The Association petitioned to intervene almost two months after the proposed rates were filed. The Association's petition was denied as the rates had been deemed into effect. The Association appealed to this Court, which held that, as the Association was not a party to the proceeding, it lacked standing to appeal from the deemed approval of the rate filing and that the Association's interest as being affected by increased rates was not within the scope of personal or property rights enjoying the protection of a due process requirement of notice of the proceedings.[2]

Our Supreme Court disagreed. That Court stated that "[w]hether an interest in benefits or protections provided by the government is entitled to due process protections depends on the nature of the government activity and the citizen's dependency and reliance on

---

[2] 25 Pa. Commonwealth Ct. 3, 358 A.2d 745 (1976).

that activity [citations omitted]." 471 Pa. at 447-48, 370 A.2d at 690. After applying the above balancing test weighing the nature of the government function involved against the interest advanced as being affected by the government action, the Court concluded that "the requirement that the coal mining companies purchase insurance, the importance of the insurance rates to their ability to remain in business, and the purposes of regulation by the Insurance Department create the combination of dependency and reliance which makes applicable the protections of procedural due process." 471 Pa. at 449, 370 A.2d at 691. The Court held that due process did not require that the Association receive a full hearing before the rates could become effective. The Court cited *Mathews v. Eldridge*, 424 U.S. 319 (1976), for the proposition that while oral proceedings may be necessary for determinations likely to turn on witness credibility, written submissions are adequate when economical or statistical questions are at issue.

It is not our intention at this time to define the exact nature of the PDA's property interest which is affected by Departmental action in approving or disapproving a rate filing. We believe it sufficient to point out that the PDA was afforded greater procedural due process than that deemed necessary by our Supreme Court when it determined the Coal Mining Association was entitled to procedural protection of its property interest. The PDA had reasonable notice of the proposed Blue Shield profile update and, an opportunity to present its views and to question Blue Shield representatives concerning the filing at a public hearing.

We hold that the PDA has failed to state a cause of action in mandamus. The PDA has no clear legal right to intervenor status at a formal hearing; nor is

the Insurance Department under any duty to provide a formal hearing. We will deny the PDA's request for a writ of mandamus.

We turn now to that portion of the PDA's petition for review which invokes our appellate jurisdiction. The Department and Blue Shield have filed a motion to quash the appeal for failure to file the appeal within thirty days of the date the filing was approved. At the root of the motion to quash for timeliness is an assumption that the PDA received timely notice of the Department's decision to approve the filing which assumption ignores the very question raised by the PDA's petition for review: Is the nature of the Department's decision and the PDA's interest in the decision such that procedural due process safeguards mandate that the PDA be granted party status in the proceedings with concommitant right to written notice of the Department's decision? Our discussion *supra* indicates that the PDA was *not* entitled to party status and, therefore, would *not* have been entitled to and did not receive notice of the Department's decision; thus, the motion to quash for timeliness is inappropriate.

The respondents also included within their preliminary objections, however, an objection to the PDA's appeal on the basis the PDA lacked standing to appeal. Though inartfully drafted, the preliminary objection to standing will, in the interests of judicial efficiency and administration, be treated as a motion to quash for lack of standing.[3] We agree that the PDA has no standing to appeal the approval of the profile update requested by Blue Shield and will grant the motion.

---

[3] This motion, fashioned from the Department's erroneous preliminary objection, should be distinguished from the Department's actual motion to quash for timeliness heretofore dismissed as inappropriate.

Our Supreme Court, in *City of Pittsburgh v. Insurance Department of Pennsylvania,* 448 Pa. 466, 294 A.2d 892 (1972), when presented with a factual situation parallel to the one at hand, also determined that the City of Pittsburgh and the County of Allegheny were not sufficiently interested in the Department's consideration and approval of a rate filing to be granted standing to challenge the proceedings conducted by the Department.

Blue Cross of Western Pennsylvania had filed a request with the Insurance Commissioner for approval of an increase of rates charged to its subscribers in twenty-nine counties of Western Pennsylvania. The Insurance Commissioner held a public informational hearing at which the basis for the rate filing was disclosed. Interested persons and organizations were provided an opportunity to submit relevant information for consideration by the Department concerning the proposed rate filing. The City and the County wished to cross-examine witnesses which was not permitted by the Department; their objection to this limitation was overruled by the Department. This Court on appeal directed the Insurance Commissioner to hold a hearing subject to the formal hearing requirements of the Administrative Agency Law and to permit the City and the County to cross-examine witnesses.[4]

---

[4] 4 Pa. Commonwealth Ct. 262, 286 A.2d 475 (1971). In Commonwealth Court, Blue Cross had taken the position that the approval of the rate increase was not an adjudication within the terms of the Administrative Agency Law and that therefore the procedural requirements of that Law were not applicable to the hearings on the rate increase. Judge (the late Justice) MANDERINO, writing for this court, after looking at the definitions of "adjudication" and "regulation" in the Administrative Agency Law, explained that procedure varied depending upon whether the action of the agency was quasi-legislative or quasi-judicial. Judge MANDERINO concluded that the decision-making involved in the proceeding being reviewed could

Though purporting not to reach the question resolved by this Court whether the approval of rates by the Insurance Commissioner is an adjudication for purposes of the Administrative Agency Law requiring a trial-type hearing, in reversing the Commonwealth Court by holding that the City and the County had no standing to challenge the procedures followed by the Insurance Department in approving or rejecting the rate filing submitted by Blue Cross, the Supreme Court stated the Nonprofit Hospital Plan Act, Act of June 21, 1937, P.L. 1948, §§1-79, 40 P.S. §§1401-1479, repealed by Section 5 of the Act of November 15, 1972, P.L. 1063, and replaced in part by 40 Pa. C.S. §6329, did not require the Insurance Commissioner to hold a trial-type hearing before approving or rejecting the proposed rate filing. With regard to the City and the County's standing to appeal, the court stated:

> The City of Pittsburgh and the County of Allegheny nevertheless contend that as consumers and representatives of consumers [footnote deleted] they have standing to challenge the proceedings conducted by the Insurance Commissioner. . . . [W]e are completely unpersuaded by appellees' assertions that they have the requisite interest in the Department's statutory consideration of Blue Cross' rate filing to afford them legal standing to participate in that process and to cross-examine witnesses. See Man O' War Racing Association, Inc. v. State Horse Racing Commission, 433 Pa. 432, 441-444, 250 A.2d 172, 176-178 (1969); Louden Hill Farm, Inc. v. Milk Control Commission, 420 Pa. 548, 217 A.2d 735 (1966); G.S.F. Corpora-

not be labelled a legislative function. Therefore, the procedure required for an adjudication was mandated and this court directed that a formal hearing be held.

tion v. Milk Marketing Board, 4 Pa. Commonwealth Ct. 230, 284 A.2d 924 (1971).

448 Pa. at 471-72, 294 A.2d at 894.

In the instant case, we are satisfied that the PDA was afforded all the rights the statute and procedural due process accord. Although permitted to attend the informational hearing held by the Insurance Department, to present any information it believed pertinent to the Department's decision and to question representatives of Blue Shield, it was not a party and, therefore, has no standing to appeal from the Department's decision.

### ORDER

AND Now, this 24th day of September, 1985, Respondents' preliminary objection in the nature of a demurrer is sustained and Petitioner's request for a writ of mandamus is dismissed. Further, Respondents' motion to quash Petitioner's appeal for lack of standing is granted.

Judge WILLIAMS, JR. did not participate in the decision in this case.