547 A.2d 824

The Pennsylvania Association of Home Health Agencies et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department and Constance B. Foster, Insurance Commissioner, Respondents.

496

Argued June 14, 1988, before President Judge CRUMLISH, JR., Judge DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*John P. Krill, Jr., Kirkpatrick & Lockhart,* for petitioners.

*Victoria A. Reider,* Assistant Counsel, with her, *Terrance J. Fitzpatrick,* Chief of Litigation, and *Linda J. Wells,* Chief Counsel, for respondents.

*Robert L. Pratter,* with him, *Joseph A. Fillip, Jr., · Duane, Morris & Heckscher,* for intervenor, Pennsylvania Compensation Rating Bureau.

*John M. Elliott,* with him, *Stephen C. Braverman,* and *M. Hannah Leavitt, Baskin, Flaherty, Elliott, Mannino & Beren, P.C.,* for Pennsylvania Coal Association, as Amicus Curiae.

OPINION BY JUDGE DOYLE, September 16, 1988:

The 'Pennsylvania Association of Home Health Agencies (Association) appeals the November 4, 1987 order of the Insurance Commissioner, Constance B. Foster (Commissioner), denying the Association's petition for review. The Association's petition challenged the Commissioner's approval, subject to her modifications, of the 1987 workers' compensation rate revision (1987 rate revision). We vacate the portion of the Commissioner's order which denied the Association *any* review of the approved 1987 rate revision, and remand this matter back to the Commissioner to review the Association's petition subject to the directives of this opinion.

The Association is a statewide organization which represents Medicare-certified, state-licensed, home health agencies. As employers in this Commonwealth, the Association and its members are statutorily required to purchase workers' compensation insurance coverage to provide benefits for their employees. The rates charged for the workers' compensation insurance are subject to regulation by the Pennsylvania Insurance Department (Department). However, it is the Pennsylvania Compensation Rating Bureau (Rating Bureau), a

nongovernmental organization of private insurers, and the State Workmen's Insurance Fund, which are charged with formulating workers' compensation insurance rate proposals for all Pennsylvania employers, other than employers of coal miners. According to Section 654(b) of the Insurance Company Law of 1921[1] (Law), no workers' compensation insurance policy may be issued except in accordance with the rates proposed by the Rating Bureau, as modified or amended or approved by the Commissioner.

The matter before us began with the Rating Bureau's submission to the Commissioner of its proposed rate revision for 1987 (rate proposal). Shortly thereafter, the Department published notice of the filing of the rate proposal in the *Pennsylvania Bulletin*. The notice stated that formal adjudicatory hearings on the proposed rate revision would commence on July 16, 1987.

On July 8, 1987, the Association filed a motion requesting allowance to participate in the administrative hearing on the rate proposal. In this motion, the Association sought the opportunity to present testimony and in addition, requested that the Commissioner grant it a thirty-day extension from the date of the scheduled hearing to allow it to file a motion to intervene and to prepare and submit objections to the rate proposal. The Commissioner, however, opted to treat the Association's motion to participate as a motion to intervene, and, by order of July 14, 1987, she granted the Association intervenor status for the rate proposal hearings to begin on July 16, 1987. Further, having interpreted the Association's motion as a motion to intervene, the Commissioner denied the Association's request for an extension. The Commissioner also granted intervenor status

---

[1] Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. §814.

to the Pennsylvania AFL-CIO and the Employers' Committee on Insurance Rating.

Hearings on the rate proposal commenced, as scheduled, on July 16, 1987, and the Association participated in the first day of hearings by presenting the unsworn statement of one of its officers. Conversely, by letter to the hearing officer dated July 17, 1987, counsel explained that since the Association "formally declined" intervenor status; counsel explained that since the Association did not have sufficient time to prepare a contest to the rate proposal, it was withdrawing all participation in the rate proposal hearings.[2]

Following four days of hearings, the hearing examiner ordered all parties to submit briefs on or before August 10, 1987. The Association, however, submitted its brief, entitled "amicus brief," and an accompanying actuarial report, on September 1, 1987. Both the Rating Bureau and the Department objected to the "amicus brief" on the grounds that it was untimely and that it was an improper attempt to offer evidence on the rate proposal without affording the Rating Bureau and the intervenor groups the opportunity for cross-examination. The hearing examiner concurred, and, on September 8, 1987, he ordered the Association's "amicus brief" stricken from the record.

On September 9, 1987, the Commissioner issued a fifty-four page order substantially amending the rate

[2] We note that the administrative regulations, which deal generally with intervention in administrative hearings, 1 Pa. Code §§35.27-35.32, do not provide any specific guidance for how a party who has been granted intervenor status may withdraw from an administrative hearing.

It would appear, however, that in cases like the one at bar where a party has been granted intervenor status, and that party intervenor actually presents evidence during the course of the hearings, the only way for that party intervenor to properly withdraw its appearance would be by leave of the presiding officer.

proposal. In response, the Rating Bureau filed a petition for reconsideration on September 18, 1987, and, on October 16, 1987, the Commissioner issued a stay of her September 9, 1987 order pending the resolution of the Bureau's petition for reconsideration. On October 5, 1987, the Association filed with the Commissioner its petition for review, which is the subject of this appeal, challenging certain aspects of the rate proposal as modified by the September 9, 1987 order.

Subsequently, the Association requested a stay of the rates approved in the September 9, 1987 order until the Commissioner had ruled upon *both* its petition for review and the Rating Bureau's petition for review. However, the Commissioner ultimately elected not to review the Association's challenges to her September 9 order. By opinion and order of November 4, 1987, the Commissioner reinstated her order of September 9, 1987, and she opined the following reasons for denying the Association a *review on the merits* of their petition.

> Whether or not a full adjudicatory hearing is to be held prior to the implementation of the rates proposed by the Bureau is for the Commissioner's sound discretion based upon the facts and circumstances surrounding each filing. Once that discretion is exercised in favor of conducting pre-implementation hearings, those parties which are given notice and an opportunity to participate in said hearings waive their right to challenge the rates approved by the Commissioner.

Commissioner's opinion at 8. Before this Court, the Association argues that the Commissioner erred in refusing to review its petition for review on the merits. The Association further contends that the level of review to which it is entitled under Section 654(b) of the Insurance Company Law of 1921 is a full hearing on the record.

This case, therefore, presents two interrelated issues. The first question we must decide is whether Section 654(b) of the Insurance Company Law of 1921 mandates that the Commissioner conduct a review of all challenges made by aggrieved persons to her issuance of final orders, classification of risks, underwriting rules, premium rates and schedule, or merit rating plans for workers' compensation issurance coverage. The second question is what constitutes a "review" for the purposes of Section 654(b).

Focusing upon the first question of whether any review is mandatory, the plain language of Section 654(b) provides for review by the Commissioner of certain challenges made by aggrieved persons. As stated in Section 654(b):

> (b) The system of classification of risks, underwriting rules, premium rates and schedule or merit rating plans for insurance plans for insurance of employers and employees under such acts, shall be filed with, and shall be subject to review by the Insurance Commission, and the Insurance Commissioner shall otherwise modify, amend or approve the same. *Any person, corporate or otherwise, aggrieved by such order, classification, rule, rate or schedule issued by the Insurance Commissioner may obtain a review thereof before the Commissioner.*

40 P.S. §814 (emphasis added). Our cases have consistently held that "[a]ny person who has a direct immediate, pecuniary and substantial interest in the subject matter is a person aggrieved." *Pennsylvania Plazas, Inc. Appeal,* 70 Pa. Commonwealth Ct. 365, 376, 453 A.2d 68, 69 (1982); *Mosside Associates, Ltd. v. Zoning Hearing Board of Municipality of Monroeville,* 70 Pa. Commonwealth Ct. 555, 454 A.2d 199 (1982). In the instant matter, the Association alleged in its challenge to the

1987 rate revision, made effective by the Commissioner's order of November 4, 1987, that the rate revision will result in substantial increases in the workers' compensation rates for the two classifications which encompass the Association's members and that the new rates for those two classifications are unfairly discriminatory, arbitrary and capricious, and contrary to law. Thus, the Association has shown that its members will suffer direct and substantial pecuniary harm as a result of the Commissioner's order of November 4, 1987, and, therefore, it qualifies as "any person aggrieved" by such order. Having decided that the Association and its members are persons aggrieved by the 1987 rate revision, it is clear that Section 654(b) entitles them to a review by the Commissioner.

The next question we must address, then, is what does a Section 654(b) "review" entail. The Insurance Company Act of 1921 does not define the term "review." Section 1903(a) of the Statutory Construction Act of 1972 directs that "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage . . . ." 1 Pa. C. S. §1903. Moreover, this Court has held that all words used in any legislation must be construed according to the common meaning and accepted usage. *Unionville-Chadds Ford School District v. Rotteveel,* 87 Pa. Commonwealth Ct. 334, 487 A.2d 109 (1985). To ascertain the common usage of the term "review," we will adopt the definition found in Black's Law Dictionary which states:

 ·   To re-examine judicially or administratively a reconsideration; second view or examination; revision, consideration for purposes of correction
     . . . .

Black's Law Dictionary 1186 (5th ed. 1979). Therefore, it is clear that a Section 654(b) review requires the

Commissioner to do nothing more than to *reconsider* her order in light of the petition for review before her.

In addition, this Court addressed the specific question of how much due process must be afforded a party where the Commissioner is statutorily required to "review" a determination in *Norwood A. McDaniel Agency v. Foster,* 117 Pa. Commonwealth Ct. 227, 543 A.2d 155 (1988). The petitioner in *Norwood A. McDaniel Agency* was an insurance agent who challenged an insurer's termination of his right to issue certain policies in Pennsylvania on the grounds that he had timely requested a review by the Commissioner of the insurer's termination action, and no review was granted. We held that Section 2(d) of the Insurance Department Act of 1921,[3] entitled the agent to a review of the termination action by the Commissioner before the insurer's termination could become effective. More significantly, in addressing the issue of what procedural safeguards a Section 2(d) review requires, we stated:

> Having determined that a review in this case is required, we take this opportunity to explain what Section 2(d) dictates. As previously indicated, there must be 'a review' by the Commissioner or her lawful designee *prior* to the effective termination of the agency contract. But we do not believe that such review must comport with the practice and procedure provisions of Sections 501-508 of the Administrative Agency Law, requiring *inter alia,* stenographically recorded proceedings and cross examination of witnesses.
>
> . . . .
>
> [N]othing in the language of Act 143 specifies that an elaborate due process hearing of the na-

---

[3] Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §242. Section 2(d) was added by Section 2(d) of the Act of September 22, 1978, P.L. 763.

ture envisioned in the Administrative Agency Law is required. It is evident when looking at the other statutes . . . that the legislature knows how to provide for elaborate due process procedures when it wishes. Accordingly, we must conclude that in cases arising under Act 143 a hearing of the magnitude contemplated in the Administrative Agency Law *is not* required.

*Id.* at 233-34, 543 A.2d 158-59 (emphasis in original). Although in the instant action we are construing the term "review" as it appears in a totally different statute, we believe that the reasoning of *Norwood A. McDaniel Agency* is entirely analogous. Thus, we hold that the minimal amount of due process that the Association is entitled to is simply a reconsideration on the merits by the Commissioner of her order of November 4, 1987 (which reinstated her opinion and order of September 9, 1987) in light of the Association's petition for review. Because the Commissioner denied the Association *any* review, due to her belief that the Association had waived its statutorily-mandated right to a review, we must remand this matter to her so that she may conduct a review in accordance with this opinion.

Finally, both the Association and the Department rely upon our Supreme Court's decision in *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 370 A.2d 685 (1977), to support their respective arguments for and against the Association's right to a post-implementation review. Our reading of this decision, however, demonstrates that both parties have mischaracterized the import of this precedent. In *Pennsylvania Coal Mining*, the Coal Mine Compensation Rating Bureau submitted a proposal to the Commissioner to increase black lung insurance premiums by almost fifty percent. The Insurance Department failed to give public notice of the rate filing. Upon learning of the

and obtaining a copy of the filing, the Coal Mining Association filed a formal petition to intervene in the proceedings on the rate filing. However, the Insurance Department denied its petition to intervene because the rates contained in the proposal had already been deemed into effect.[4] As a result, the Coal Mining Association appealed to the Commonwealth Court and then to the Supreme Court.

The sole issue before the Supreme Court on appeal was whether the procedure by which rates had been deemed into effect without notice to interested parties violated due process. The Supreme Court held that the Coal Mining Association's members' interest in insurance rates was protected by concepts of due process, and that the Insurance Department had violated those due process rights when black lung rates had been deemed into effect without prior notice to interested parties. Addressing the issue of what procedural safeguards must be afforded to interested parties before new rates can take effect, the *Pennsylvania Coal Mining* Court held that such parties are entitled to, *inter alia:* (1) notice of a rate filing by publication in the *Pennsylvania Bulletin;* and (2) the opportunity to submit writ-

---

[4] Pursuant to Section 654 of the Law, workers' compensation rate filings automatically become effective by force of law within thirty days after the Workmen's Compensation Rating Bureau has filed its rate proposal with the Insurance Department if the Insurance Commissioner takes no further action. The Insurance Commissioner may, in a particular case, extend the "deemer" period up to thirty additional days upon written notice to the Workmen's Compensation Rating Bureau.

When the events which led to the *Pennsylvania Coal Mining* case took place, the "deemer" provision had recently been enacted and apparently neither the Coal Mining Association nor the Insurance Department was aware that under the new amendment, the 1975 rates could be deemed into effect without the Commissioner's approval. *Id.* at 444 n.5, 370 A.2d at 688 n.5.

ten comments to the Insurance Commissioner on a rate filing *before* the proposed rates may take effect. *Id.* at 453-454, 370 A.2d at 693.

Incidental to its discussion of what due process must be granted to interested parties before a rate proposal becomes effective, the Court, in *Pennsylvania Coal Mining,* examined the language of Section 654(b) and suggested that that Section provides "for a full hearing after rates take effect." *Id.* at 450, 370 A.2d at 691. Basically, the Association premises its entire argument for a Section 654(b) review consisting of a *full hearing* upon this one line in the *Pennsylvania Coal Mining* decision. We hold, however, that this one phrase, when read in the context of the entire decision, is plainly dictum. The *Pennsylvania Coal Mining* case established the base minimum of procedural safeguards which must be afforded to interested parties *prior to* a rate filing becoming effective. In contrast, Section 654(b), which we construe here, addresses, *inter alia,* the right to a review of challenges to *enacted rates.* Thus, we will not give the *Pennsylvania Coal Mining* Court's passing comment on the interpretation of a statute not before it the status of binding authority. In rejecting the Association's argument, we are merely following our Supreme Court's long established rule that in every case what is actually decided is the law applicable to the particular facts, and all other legal conclusions therein are but "obiter dicta." *Kenin's Trust Estate (No. 1),* 343 Pa. 549, 23 A.2d 837 (1942).

Further, we also reject the Commissioner's reliance upon *Pennsylvania Coal Mining* to support her conclusion that the Association "waived" all right to a Section 654(b) review when it withdrew its participation from the pre-implementation hearings. In her opinion and order of November 4, 1987, the Commissioner quoted the following language from *Pennsylvania Coal Mining* to support her theory:

We also conclude that the coal mining companies should be given a reasonable opportunity to present written objections to rates proposed by the Rating Bureau. This opportunity is necessary to enable them to present to the Insurance Commissioner any reasons why rate increases should not be allowed, or *why a hearing should be held before rates become effective. . . .*

We do not believe, however, that due process requires that the Association receive a full hearing before rates can become effective.

Opinion of Commissioner at 8, (quoting *Pennsylvania Coal Mining,* 471 Pa. at 453-54, 370 A.2d at 693 (emphasis in original and footnote and citation omitted)). It is clear that the above-quoted language addresses what due process must be granted *prior* to the Commissioner's approval of a rate. It is equally clear that the *Pennsylvania Coal Mining* decision affords the Commissioner wide flexibility in what, if any, procedural safeguards she may grant to interested parties over and above the minimal safeguards of notice and the opportunity to file objections. We hold, however, that *Pennsylvania Coal Mining* certainly does not grant the Commissioner the authority to choose to hold a full pre-implementation hearing at the expense of denying those parties who choose not to participate their statutorily-mandated right to a Section 654(b) review.

Because we conclude that the Commissioner may not deny the Association what the Legislature has statutorily granted to it, we remand this matter to the Commissioner so that she may conduct a review of the Association's petition for review in accordance with this opinion.

ORDER

Now, September 16, 1988, the order of November 4, 1987 of the Insurance Commissioner, Constance B.

Foster, in the above-captioned matter is hereby vacated insofar as it denied the Petitioners any review and remanded to the Commissioner with direction that she conduct a review in accordance with this opinion.

Jurisdiction relinquished.