513 A.2d 1086

Pennsylvania Society of Oral & Maxillofacial Surgeons, William W. Weiss, Jr., D.D.S., and Allan S. Shaw, D.D.S., Petitioners *v.* Insurance Commissioner of the Commonwealth of Pennsylvania, Continental Casualty Company and National Fire Insurance Company of Hartford, Respondents.

Argued April 9, 1986, before Judges ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and COLINS.

*Harvey Bargle, III,* with him, *Linda J. Walters, Deckert, Price & Rhoads,* for petitioners.

*Robert E. J. Curran, Curran, Winning & Fioravanti, P.C.,* with him, *M. Hannah Leavitt* and *Regina Grayson Jamerson,* for respondents.

OPINION BY JUDGE ROGERS, August 5, 1986:

This is the petition of the Pennsylvania Society of Oral and Maxillofacial Surgeons and two of its members (petitioners) for review of an order of the Insurance Commissioner of Pennsylvania denying the petitioners' motion that the respondents, Continental Casualty Company and National Fire Insurance Company of Hartford, be required to furnish the petitioners certain information which they, the petitioners, deemed necessary in order for the petitioners to form judgments as to the propriety of the respondents' filing of proposed increased rates and that the effectiveness of the filing be stayed until the petitioners should obtain the desired information and thereafter until the petitioners should be heard with respect to the proposed filing.

On February 26, 1985, Continental Casualty Company and its affiliate, National Fire Insurance Company

of Hartford (respondents), submitted a rate filing to the Pennsylvania Insurance Department (department) pursuant to Section 4 of The Casualty and Surety Rate Regulation Act (Rate Act), Act of June 11, 1947, P.L. 538, 40 P.S. §1184. The filing proposed significant increases in the rates the respondents would charge dentists for liability coverage. They affected so-called Class I, II & III Dentists.

A notice of the filing was published by the department in the *Pennsylvania Bulletin* on March 16, 1985. The notice, which we reproduce later, briefly described the proposed increases in dentists' professional liability rates; gave notice that copies of the filing were available at the department's offices; and invited persons wishing to submit written comments, questions, or objections to do so by sending them to the department's property and casualty actuary. The notice gave the date the filing was made, February 26, 1985, and informed the reader that "[u]nless formal administrative action is taken prior to March 27, 1985, the filings may be deemed effective by operation of law."

By letter dated March 19, 1985, counsel for the petitioners requested the respondents to supply his clients with "any and all documents, including work papers and drafts" relating to the filing, the actuarial methods used in making the filings, what lower rates the respondents would be satisfied to receive, how investment income was factored into the filing and safety and loss prevention factors considered.

On April 12, 1985, counsel for the petitioners wrote to the respondents asking for additional material, including the insurers' records of claim costs, losses, premiums and expenses. On the same day counsel for the petitioners wrote to the department's actuary reporting that he, counsel, had not received the information he had earlier requested of the respondents, in-

forming the actuary that his clients would be unable to "make a full and complete actuarial report to the Insurance Department concerning this filing" until they had the requested material and requesting that the department make no decision on the filing until his clients should be able to respond.

By letter dated April 12, 1985, counsel for the respondents wrote to the petitioners' counsel enclosing a copy of the respondents' filing but declining to furnish the additional information requested as not required by the Rate Act to be furnished to anyone prior to the effective date of such rates as should be approved by the Insurance Commissioner.

By letter dated April 18, 1985 the department's actuary wrote counsel for the petitioners warning that the statutes require the Insurance Commissioner to review filings within thirty days plus a thirty days' extension if ordered and that the department would soon have to resolve the matter. The department actuary added that he would be interested in any information or comment the petitioners would care to make.

On April 24, 1985, this litigation was begun by the filing of a motion by the petitioners with the department that the respondents be compelled to produce the information requested by the petitioners' counsel in his letters of March 19 and April 12, 1985 and that the effectiveness of the proposed filing be postponed until a reasonable time after the information is produced "so that the Petitioners may be heard on the proposed filing." The department filed an Answer generally opposing the motion.

On May 7, 1985, the presiding officer of the department's hearing office handed down an order which, after describing the history of the controversy, noted that in view of the publication of notice of the filing in the *Pennsylvania Bulletin* and the requirements of Section

4(d) of the Rate Act, 40 P.S. §1184(d)[1] that "some kind of action or nonaction has occurred with respect to this filing but that there is nothing in the record to indicate the actual status of the filing and that the actual status must be known in order to evaluate the petitioners' motion," citing Section 5(b) of the Rate Act, 40 P.S. §1185(b).[2] The hearing officer directed the parties to file a stipulation of facts not in dispute, to file memoranda of law and scheduled a prehearing conference for May 23, 1985.

A stipulation and supplemental stipulation were filed essentially describing the facts as we have given them and additionally observing that the respondents' filing had not been acted upon by the Insurance Commissioner and that the respondents had not attempted to put the new rates into effect.

On June 4, 1985 the Insurance Commissioner denied the petitioners' motion with an opinion expressing his view that the Rate Act did not require that the insurers must comply with the insured's requests for information concerning proposed rates; and declaring that the Rate Act required that such information should be provided only after rates became effective.

On June 10, 1985 the petitioners filed the instant petition for review directed to the Commissioner's June 4, 1985 denial of their April 24, 1985 motion. They con-

---

[1] As will be later noticed in the body of this opinion, Section 4(d) provides that each filing shall be on file for a waiting period of thirty days before it becomes effective, which period may be extended by the Insurance Commissioner for an additional thirty days upon notice to the filing insurer; and that a filing shall be deemed to meet the requirements of the Act and become effective unless disapproved by the Insurance Commissioner within the waiting period or any extension thereof.

[2] Section 5(b) pertinently provides that any person aggrieved with respect to any filing which is in effect may make written application to the Insurance Commissioner for a hearing thereon.

tend that the Insurance Commissioner erred as a matter of law in refusing to compel the respondents to produce the information requested by counsel, citing Section 9 of the Rate Act, 40 P.S. §1189; that the Insurance Commissioner erred in not staying action until such information was produced and the petitioners heard; and that the Rate Act denies them due process.

Also on June 10, 1985 the petitioners filed a motion with this court that the effective date of the filing be stayed pending our disposition of this petition for review. We scheduled a hearing on the motion for June 18, 1985.

On June 17, 1985 the Insurance Commissioner approved new rates for the respondents dentists' professional liability insurance to be effective July 1, 1985. These new rates provided for no increase in rates of Class I and Class II dentists and rates less than those proposed in the February 26, 1985 filing for Class III dentists. These emendations of the original filing may have been the result of additional information elicited from the respondents by the Insurance Commissioner perhaps after June 10, 1985. The petitioners seem not to have been furnished with this additional material.

On June 18, 1985, as scheduled, we conducted a hearing on the matter of the petitioners' motion to stay the effective date of new rates pending decision on the petition for review. We refused the stay on June 25, 1985.

On June 28, 1985, Chief Justice ROBERT N.C. NIX, JR. denied the petitioners' further application to the Supreme Court for stay of the new rates affecting the Class III dentists but required the respondents to deposit the amount of increases in those rates over old rates in savings accounts pending final decision of the petition for review.

The petitioners first contend that they were entitled by law to the information they requested from the

respondents on March 19 and April 12, 1985; and that this entitlement is conferred by Section 9 of the Rate Act, 40 P.S. §1189. The petitioners then say that the Insurance Commissioner erred in refusing to hold the respondents' filing in abeyance because, as they write in their brief, "[o]bviously, if the Insureds are entitled to obtain the rate information before the rates go into effect, they are entitled to an opportunity to review that material and to be heard, in writing[3] or otherwise, before those rates go into effect." The petitioners further contend that they were entitled by principles of due process to have the information they want and to a stay of the effectiveness of the rates until they can be heard. In these connections they rely on *Pennsylvania Coal Mining Association v. The Insurance Department,* 471 Pa. 437, 370 A.2d 685 (1977).

Because the petitioners contend that Section 9, 40 P.S. §1189 entitles them to the information they sought from the respondents in March and April 1985 and for the dependent proposition that they must therefore be heard before the new rates are approved, we reproduce Section 9 in full:

**Information to be furnished insureds; hearings and appeals of** *insureds*

Every rating organization and every insurer which makes its own rates shall, within a reasonable time after receiving written request there-

---

[3] The petitioners elsewhere seem to take the position that they are entitled to an evidentiary hearing before rates might be approved or become effective. Since the authority they advance for a constitutional right to be heard is the *Pennsylvania Coal Mining Association* case in which, under a statute quite different from the Rate Act, the Pennsylvania Supreme Court held that the insured's due process right is met by the right to offer written comment, the petitioners' right here, if any, would not extend beyond written comment.

for and upon payment of such reasonable charge as it may make, furnish to any insured affected by a rate made by it, or to the authorized representative of such insured, all pertinent information as to such rate.

Every rating organization and every insurer which makes its own rates shall provide, within this Commonwealth, reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or insurer fails to grant or reject such request within thirty (30) days after it is made, the applicant may proceed in the same manner as if his application has been rejected. Any party affected by the action of such rating organization or such insurer on such request may, within thirty (30) days after written notice of such action, appeal to the Commissioner, who, after a hearing held upon not less than ten days written notice to the appellant and to such rating organization or insurer, may affirm or reverse such action.

The petitioners center their argument upon the first paragraph, requiring "every insurer which makes its own rates, . . . to . . . furnish to any insured affected by a rate made by it, or to the authorized representative of such insured, all pertinent information as to such rate." The petitioners contend that the respondents were bound by this provision to furnish them the material their counsel requested by his letters of March 19, and April 12, 1985, concerning the rates proposed in the respondents' filing of February 26, 1985. The petition-

ers' reading of the statute is, in our view, mistaken. Section 9 does not require a filing insurer to provide "pertinent information" before, at the earliest, the proposed rates have been approved by the Commissioner. As just noted, the words of the first paragraph describe the person entitled to information as any "insured affected"; the second paragraph, giving insureds the right to a hearing by the insurer, refers to "review [of the] manner in which the rating system has been applied in connection with the insurance afforded him." At the times the petitioners sought information from the respondents, they were not affected by the proposed rate; there were indeed no rates which had been made by the respondents at the time.

The petitioners' status while the respondents' filing was merely a proposal was, it seems to us, similar to that of the City of Pittsburgh and Allegheny County, the appellees in *Pittsburgh v. Insurance Department*, 448 Pa. 466, 294 A.2d 892 (1972). In that case the Supreme Court reversed an order of the Commonwealth Court requiring the Insurance Commissioner to conduct a hearing concerning a proposed Blue Cross rate at which the city and county might cross-examine witnesses. The Supreme Court held that the Commissioner was not required to conduct an adversarial trial type hearing before approving rates; so that the city and county had no right to cross-examine witnesses at an "informational" hearing conducted by the Commissioner. The pertinent legislation, the since repealed Nonprofit Hospital Plan Act,[4] provided, as does the Rate Act, that proposed rates should be subject to the prior approval of the Insurance Department and made no provision for participation of insureds in the rate-making process.

---

[4] Act of June 21, 1937, P.L. 1948, 40 P.S. §1401-1409, repealed by the Act of November 15, 1972, P.L. 1063.

As our analysis of Section 9 we believe demonstrates, the Legislature intended thereby to confer upon insureds the right to have "pertinent information" from their insurers only with respect to rates which had been made by the latter, that is, in the words of Section 9, rates which "affected" the insureds or which by their "application" caused the insureds to be "persons aggrieved." On June 10, 1985, when the petitioners filed their petition for review, the proposed rates had not been approved by the Commissioner and of course were not effective. The petitioners were not then affected by the proposed new rates and the rates did not of course apply. On June 17, 1985 the Commissioner approved new rates effective July 1, 1985. As we shall see, after June 17, the petitioners could have filed a complaint and been heard under Section 17(a) and from July 1 when the revised rates became effective they could have applied for a hearing under Section 5(b). In either event they would then have been entitled under Section 9 to pertinent information concerning the rates, which as of those dates affected them.

Passing now to the petitioners' due process claim we must first briefly describe other parts of the Rate Act. Section 4, 40 P.S. §1184, entitled Rate Filings, provides that the insurer shall file every rate and modification of a rate with the Commissioner; that such filing shall propose an effective date; that if the Commissioner believes the filing contains insufficient information he may require that more be filed; that the Commissioner shall review the filing as necessary to carry out the purposes of the Rate Act; that the filing shall be on file for a waiting period of thirty days before it becomes effective, which period may be extended by the Commissioner for another period not to exceed thirty days; and that a filing shall be deemed to become effective unless disapproved by the Commissioner within the waiting period.

Section 5, 40 P.S. §1185, entitled Disapproval of Filings, provides in subparagraph (a) that the Commissioner before disapproving a filing shall hold a hearing on notice to the *filing insurer*. Subparagraph 5(b) provides that any person aggrieved with respect to any filing *which is in effect* may apply for a hearing.

Finally, Section 17, 40 P.S. §1197, entitled Hearing Procedure and Judicial Review, provides in subsection (a) that any insurer, rating organization or person aggrieved by any action of the Insurance Commissioner shall have the right to file a complaint with the Insurance Commissioner and to have a hearing thereon by the Insurance Commissioner.

In short, Section 4 of the Rate Act provides for the filing of proposed rates, their approval by the Commissioner and for deemed approval unless disapproved. Section 5(b) provides a hearing for persons aggrieved by a rate which is in effect; and Section 17(a) provides that persons aggrieved by any action of the Commissioner may file a complaint and have a hearing before the Commissioner. In *Pennsylvania Insurance Department v. Adrid*, 24 Pa. Commonwealth Ct. 270, 355 A.2d 597 (1976), we had occasion to consider the appeal of insureds who had filed a complaint with the Commissioner under Section 17(a) of the Rate Act from rates which were in effect at the time the complaint was filed. We there affirmed the Commissioner's action dismissing the complaint brought under 17(a) but we granted the appellants leave to file an amended application for hearing under Section 5(b). We agreed with the Commissioner that Section 5(b) provided the exclusive means of challenging rates which were already in effect. We also held, however, that Section 17(a), provided the means by which an insured might contest an approved but not yet effective rate. In *Hartford Accident and Indemnity Company v. Insurance Commissioner*, 505 Pa. 571, 482

A.2d 542 (1984), an insurer had appealed an order of the Commonwealth Court upholding an order of the Insurance Commissioner rescinding a previously approved and effective rate. Preliminary to upholding the order of the Commonwealth Court, the Supreme Court wrote that "[p]ersons aggrieved by an approved filing which has not taken effect are entitled to file a complaint with and have a hearing before the Commissioner," citing Section 17(a) and *Adrid. Id.* at 578, 482 A.2d at 545. From all of this we learn that the Rate Act provides for no hearing for insureds until proposed insurance rates are approved by the Commissioner.

The petitioners rest their due process argument on *Pennsylvania Coal Mining Association.* They have not analyzed rate making under the Rate Act with respect to the presence of the three elements necessary to a successful due process challenge; namely, is there state action, is there an infringement of a protected interest, and has no opportunity to be heard been provided. An exposition of these elements in relation to the Rate Act is provided by the Comment, *Insurance Rate Regulation in Pennsylvania: Does the Consumer Have a Voice?,* 81 Dick. L. Rev. 297, the author of which concludes, after a conscientious examination of case law, that state action is not present because under the Rate Act rates are made by insurers, not the Insurance Commissioner; that under existing case law,[5] insureds have no property interest in maintaining their insurance rates at previously established levels; and that the provision by the Rate Act of a hearing after new rates become approved or effective satisfies the requirement of procedural due process.

---

[5] Citing *Hold v. Yonce,* 370 F. Supp. (D.S.C. 1973) *aff'd mem.,* 415 U.S. 969 (1974); and *Baker v. Pennsylvania Public Utility Commission,* 14 Pa. Commonwealth Ct. 245, 322 A.2d 735 (1974).

We pass finally to *Pennsylvania Coal Mining Association* upon which the petitioners rely. The Supreme Court there held that coal companies required by relevant statutes to purchase insurance coverage for black lung at rates fixed by the Rating Bureau, an essentially private body composed of insurers, which rates had become effective by deemed approval without notice, had suffered a denial of due process; and that the coal mining companies were entitled to (1) notice that the proposed rates had been filed, (2) of where copies of the rates could be obtained, (3) that the rates would be deemed into effect unless action were first taken by the Insurance Commissioner, and (4) that interested persons may present written objections to the proposed rates. The Supreme Court further held that notice by publication in the *Pennsylvania Bulletin* would be adequate and that the opportunity to submit written submissions would satisfy procedural due process.

The notice published by the department in the present case was as follows:

Continental Casualty Company and National Fire Insurance Company of Hartford; Dentists' Liability Insurance

On February 26, 1985, the Insurance Department received the above-captioned filings requesting the approval of an overall 258.8% increase in dentists' professional liability rates including property liability, from Continental Casualty Company and an overall 236.5% professional liability coverage rates from National Fire Insurance Company of Hartford. The requested percentage changes vary by class and territory. Unless formal administrative action is taken prior to March 27, 1985, the filings may be deemed effective by operation of law. Copies of the filings are made available for public inspec-

tion during normal work hours at department offices in Harrisburg, Philadelphia, Pittsburgh, and Erie.

As can be seen, this notice clearly conforms with the requirements of *Pennsylvania Coal Mining Association*.

Moreover, the circumstances here are much different from, and more favorable to the insureds than, those of *Pennsylvania Coal Mining Association*. The petitioners here were not required to purchase liability insurance fixed in the first instance by an essentially private body composed of insurers. So far as this record shows, the petitioners might have purchased insurance from other insurers at better rates than those here contested. Moreover, the rates in this case did not become effective by deemed approval without notice to the petitioners.

For these reasons, we affirm the Insurance Commissioner's order of June 4, 1985.

ORDER

AND NOW, this 5th day of August, 1986, the order of the Insurance Commissioner of the Commonwealth of Pennsylvania in the above-captioned matter is affirmed.

President Judge CRUMLISH, JR. did not participate in the decision of this case.