522 A.2d 1167

Nationwide Mutual Insurance Company et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department et al., Respondents.

Nationwide Mutual Insurance Company et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

The Travelers Indemnity Company et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department et al., Respondents.

The Travelers Indemnity Company et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department et al., Respondents.

Allstate Insurance Company et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department et al., Respondents.

Allstate Insurance Company et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department et al., Respondents.

Commonwealth of Pennsylvania, Insurance Department, Plaintiff *v.* Travelers Indemnity Company et al., Defendants.

Commonwealth of Pennsylvania, Insurance Department, Plaintiff *v.* Allstate Insurance Company et al., Defendants.

Heard February 24, 1987, before President Judge CRUMLISH, JR.

*Jeffrey B. Clay, McNees, Wallace & Nurick,* with him, *H. Lee Roussel* and *Terry R. Bossert,* for petitioners, Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company.

*S. Walter Foulkrod, III,* with him, *R. James Reynolds, Jr., John Havas* and *Stephen L. Banko, Jr., Foulkrod, Reynolds & Havas,* for petitioners, The Travelers Indemnity Company, The Charter Oak Fire Insurance Company, The Phoenix Insurance Company, The Travelers Indemnity Company of America, and Allstate Insurance Company and Allstate Indemnity Company.

*Hannah Leavitt,* Chief Counsel, with her, *Arthur Selikoff* and *Regina Matz,* Assistant Counsels, and *Linda Wells,* Chief of Litigation, *Andrew H. Cline,* Associate Deputy General Counsel, for respondent/plaintiff, Commonwealth of Pennsylvania, Insurance Department and Constance B. Foster, Acting Insurance Commissioner.

*Zori G. Ferkin, Sutherland, Asbill & Brennan,* for intervenor, Industrial Energy Consumers of Pennsylvania.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., March 2, 1987:

The Travelers Indemnity Company,[1] Allstate Insurance Company,[2] and Nationwide Mutual Insurance Company[3] have filed petitions for review and applications for special relief[4] and for stay and/or supersedeas[5] of Acting Insurance Commissioner Constance B. Foster's orders dated February 11, 1987, suspending and postponing their collective insurance premium rate increases. The Insurance Department (Department) has filed amended complaints in equity and applications for preliminary injunctions[6] seeking to enjoin Travelers and Allstate from violating those February 11, 1987 orders and directing them to refund any premiums which have been or may be collected in violation of those orders.

Following comprehensive review of the pleadings, briefs, exhibits and hearing thereon in each of these proceedings, this Chancellor finds that petitioners' actions are essentially appeals of administrative adjudications[7] and therefore we will at this time consider petitioners' applications for stay and/or supersedeas.

---

[1] The Charter Oak Fire Insurance Company, the Phoenix Insurance Company and the Travelers Indemnity Company of America are co-petitioners in the Travelers Indemnity Company proceedings.

[2] Allstate Indemnity Company is a co-petitioner in the Allstate Insurance Company proceedings.

[3] Nationwide Mutual Fire Insurance Company is a co-petitioner in the Nationwide Mutual Insurance Company proceedings.

[4] These applications are in this Court's original jurisdiction, 42 Pa. C. S. §761, and are filed pursuant to Pa. R.A.P. 1532(a).

[5] These applications are in this Court's appellate jurisdiction, 42 Pa. C. S. §763, and are filed pursuant to Pa. R.A.P. 1781.

[6] These actions are in our original jurisdiction. The motions for preliminary injunctions are filed pursuant to Pa. R.C.P. No. 1531.

[7] This Chancellor concludes preliminarily that the February 11, 1987 orders are adjudications and subject to this Court's review

In order for a petitioner to succeed in an application for stay pending appeal, one must (1) make a strong showing that he is likely to prevail on the merits, (2) demonstrate that without the requested relief, he will suffer irreparable injury, (3) demonstrate that other interested parties in the proceedings will not be substantially harmed if relief is granted, and (4) show that the public interest will not be adversely affected. *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983).

With respect to the first prong of the *Process Gas* test, it is important to note that this matter involves only one issue. That narrow issue is whether petitioners' rate increases can be validly implemented pending the Acting Insurance Commissioner's resolution of the complaints challenging the rate increases. Hearings on those complaints are scheduled for March 3, 10 and 12, 1987. *In this proceeding,* it is not the function of the Chancellor to decide if the complaints are valid nor does the Chancellor have the authority to do so.

Pursuant to Section 17(a) of the Casualty and Surety Rate Regulatory Act,[8] Acting Insurance Commissioner Constance B. Foster entered orders suspending petitioners' automobile insurance rate increases. Section 17(a) provides:

**Hearing procedure and judicial review**

(a) Any insurer, rating organization or person aggrieved by any action of the Commission-

within its appellate jurisdiction. Moreover, due to the exigencies and extraordinary circumstances involved, the seeking of a stay from the Acting Insurance Commissioner pursuant to 1781(a) would be impractical.

[8] Act of June 11, 1947, P.L. 538, *as amended,* 40 P.S. §1197. The Casualty and Surety Rate Regulatory Act, Act of June 11, 1947, P.L. 538, *as amended,* 40 P.S. §§1181—1199, shall hereinafter be referred to as the Rate Act.

er, except disapproval of a filing or a part thereof as provided for in section five hereof, or by any rule or regulation adopted and promulgated by the Commissioner, shall have the right to file complaint with the Commissioner and to have a hearing thereon before the Commissioner. Pending such hearing and the decision thereon the Commissioner may suspend or postpone the effective date of his previous action, rule or regulation.

Petitioners contend that Acting Commissioner Foster erroneously invoked Section 17(a) as authority for her February 11, 1987 orders because it is Section 5(b) of the Rate Act[9] which exclusively controls a Commissioner's authority to enter orders on rate filings which are "in effect." Section 5(b) provides:

(b) Any person or organization aggrieved with respect to any filing which is in effect may make written application to the Commissioner for a hearing thereon: Provided, however, That the insurer or rating organization that made the filing shall not be authorized to proceed under this subsection. Such application shall specify the grounds to be relied upon by the applicant. If the Commissioner shall find that the application is made in good faith, that the applicant would be so aggrieved if his grounds are established, and that such grounds otherwise justify holding such a hearing, he shall, within thirty (30) days after receipt of such application, hold a hearing upon not less than ten (10) days written notice to the applicant and to every insurer and rating organization which made such filing.

---

[9] 40 P.S. §1185(b).

If, after such hearing, the Commissioner finds that the filing or a part thereof does not meet the requirements of this Act, he shall issue an order specifying in what respects he finds that such filing or a part thereof fails to meet the requirements of this Act, and stating when, within a reasonable period thereafter, such filing or a part thereof shall be deemed no longer effective. Copies of said orders shall be sent to the applicant and to every such insurer and rating organization. Said order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order.

Section 5(b) thus requires a Commissioner acting upon complaint to hold a hearing *before* an order is entered prospectively cancelling a rate filing or a part thereof. These provisions have been examined, reviewed and resolved by our Supreme Court in *Hartford Accident and Indemnity Co. v. Insurance Commissioner,* 505 Pa. 571, 482 A.2d 542 (1984), and by this Court in *Insurance Department v. Adrid,* 24 Pa. Commonwealth Ct. 270, 355 A.2d 597 (1976), and *Pennsylvania Society of Oral & Maxillofacial Surgeons v. Insurance Commissioner,* 99 Pa. Commonwealth Ct. 439, 513 A.2d 1086 (1986). Collectively, these cases instruct us that Section 5(b) provides the exclusive remedy by which rate filings "in effect" are challenged, while Section 17(a) allows challenges to rate filings which are either unapproved or have been approved but are not yet effective.

The clear distinction between these provisions and the orderly review provided therein becomes confused when the facts evolving from the instant petitions are applied thereto.

Petitioners' rate increases became "effective" herein not by Commissioner approval but by force of law under Section 4(d) of the Rate Act,[10] which "deems" a rate fil-

---

[10] 40 P.S. §1184(d).

ing to become effective after it has been on file for a waiting period of thirty (30) days or for sixty (60) days if the Commissioner grants an extension thereof.

Travelers filed its rate filing seeking a 15.4% increase on October 23, 1986. It subsequently amended this filing by reducing its proposed increase to 13.9% on December 12, 1986.

Allstate submitted its rate filing seeking a 13% increase on October 23, 1986, and also subsequently amended it on December 18, 1986, to seek a reduced increase of 11%.

Nationwide submitted its rate proposal seeking a 27.2% increase on December 1, 1986.

The record as developed at a hearing before this Chancellor clearly establishes that the Commissioner's office did not, within the legislatively mandated thirty-day period, issue orders extending or disapproving these rate filings. Thus, by operation of Section 4(d), the rate filings were "deemed" in effect by petitioners at the end of each appropriate waiting period.

Acting Commissioner Foster, who entered office with these deadlines having elapsed, contends that the regular negotiation process following rate increase submissions, as evidenced by the amended filings, suspends the operation of the thirty-day waiting period. She also argues that she properly acted upon complaints by ordering hearings under Section 17(a) because the "deemer" provision constitutes an "approval," thus granting her authority to act *before* the insurer's proposed effective date.

Although the evidence at the hearing established that petitioners had never before resorted to the use of the deemer provision in rate filings with the Commissioner, all parties were aware of the possibility that a deemer was involved.

The testimony of George Sullivan, an associate director of Travelers Insurance Company, which this

Chancellor finds credible, indicates that Department employees acting under former Commissioner Grode discussed "deemers" with petitioners as early as the second week of December 1986. Thus, this Chancellor holds that the clear legislative pronouncement in Section 4(d) which created "deemer" authority controls over informal insurer/department relationships.

Likewise, the hearing notices sent by former Commissioner Grode to Nationwide and Travelers and by Acting Commissioner Foster to Allstate cannot invalidate the operation of Section 4(d). Section 4(d) provides:

> (d) Subject to the exception specified in subsection (e) of this section, each filing shall be on file for a waiting period of thirty (30) days before it becomes effective, which period may be extended by the Commissioner for an additional period not to exceed thirty (30) days upon written notice within such waiting period to the insurer or rating organization which made the filing. Upon written application by such insurer or rating organization, the Commission may authorize a filing of a part thereof which he has reviewed to become effective before the expiration of the waiting period or any extension thereof. A filing shall be *deemed to meet the requirements of* this Act *and to become effective unless disapproved,* as hereinafter provided, by the Commissioner within the waiting period or any extension thereof.

(Emphasis added.) This provision enables a rate filing to have validity as a matter of law after the expiration of the waiting period. The legislative intent of the deemer provision is to prevent bureaucratic delay in the review and disposition of rate filings.

Thus, since Section 4(d) is the vehicle which authorizes the rate increases, Acting Commissioner Foster is powerless to suspend or postpone petitioners' rate in-

crease implementation dates because Section 17(a) requires a Commissioner to amend *his (her) previous action*. We can find no action by former Commissioner Grode disapproving the rate filings. Section 17(a) does not give a Commissioner the authority to revoke a Section 4(d) "deemer" increase until a hearing on the validity of a rate filing is held.

Following his careful review of the pleadings, briefs, argument and evidence, this Chancellor finds that petitioners have met their burden of demonstrating a strong likelihood of success on the merits.

Turning next to the second requirement of *Process Gas*, which requires petitioners to present evidence of irreparable injury to them if a stay is refused, this Chancellor finds that the burden has been met. Although the Acting Commissioner correctly argues that economic harm alone will not establish irreparable harm, this Chancellor finds that there is more present here than the mere loss of economic stability. Petitioners presented credible testimony of the chaos which will occur to their billing, collection and other clerical divisions if appropriate relief is not entered. Strict adherence to the Rate Act must be enforced to maintain a sound insurance industry. Moreover, since the February 11, 1987 orders appear to be improperly entered, constitutional due process rights may be infringed. *See Clover Farms Dairy v. Brumbaugh*, 586 F. Supp. 1227 (M.D. Pa. 1984). This Chancellor finds that petitioners will suffer irreparable harm if relief is not granted.

Additionally, petitioners have also established that the other interested parties to these actions will not be substantially harmed by a stay. Acting Commissioner Foster commendably has ordered expeditious hearings on the rate increases, and a prompt determination by her will adequately protect the Department and the general public's interest. Thus, this Chancellor is con-

vinced that Acting Commissioner Foster will move with dispatch heretofore unknown in this process to make an appropriate determination.

Finally, this Chancellor must determine whether petitioners have demonstrated that the public interest will not be adversely affected by the granting of a stay. The Acting Commissioner rightly argues that increased premium payments by policyholders which have not been fully examined and reviewed by the Insurance Department will adversely affect the public interest. However, this concern must be weighed against the express terms found in Section 4(d) which "deems" rate filings to become effective *absent* Commission action.

The legislature, in its wisdom, must consider and determine by the exercise of its constitutional authority what process best serves the public interest. It must be emphasized that it alone is charged with the duty of establishing public policy. Orderly procedures having adequate safeguards assuring fiscal stability of insurance carriers and balancing the public need for and right to fair and adequate coverage have been the subject of intensive consideration by the General Assembly. It has achieved the required balance between the rights and duties of insurers and their policyholders.

The administration of these procedures has been delegated to the Insurance Commissioner. This Chancellor is convinced that the procedural provisions of the Rate Act, if properly followed by the Commissioner, best serve the public interest.

Indeed, Section 4(e) of the Rate Act[11] provides that rate filings in areas uncovered by previous filings are "deemed" effective immediately upon filing. In considering these pronouncements, this Chancellor may not substitute his perception of public policy, or that of

---

[11] 40 P.S. §1184(e).

the Acting Insurance Commissioner, when such an interpretation would be at variance with the public policy declared by the legislature.

## CONCLUSION

Travelers, Allstate and Nationwide submitted rate filings proposing premium increases of thirteen to over twenty-seven percent. These filings were submitted during the administration of former Governor Thornburgh and former Commissioner Grode. These premiums were reviewed and discussed and certain changes in the rate proposals were supported by Commissioner Grode's deputies. Tentative agreements on premium increases between ten and fifteen percent, as evidenced by amended rate filings, were reached.

The record discloses that while the rates were pending formal approval by Commissioner Grode, news stories and editorials in a Philadelphia newspaper appeared. The substance of these materials was that the rates were unreasonably excessive but were being approved by the Thornburgh administration. In short, no action was taken and the burden shifted to the incoming administration to evaluate the increased rates. Thus, the insurance companies, facing continuing economic losses, utilized the Rate Act to protect their interests. The Acting Insurance Commissioner, finding this situation thrust upon her, sought through letter correspondence to have the companies revoke their "deemers." Subsequently, Acting Commissioner Foster, through Deputy Commissioner Buzby, refused to meet and discuss a solution. This left petitioners with no alternative but to rely on the deemer provision. Beset with the urgency of critical decision, Acting Commissioner Foster attempted to circumvent the established Rate Act procedure and entered the February 11, 1987

orders. Thus, the petitioners had no other alternative but to resort to this Court for relief.

As reviewed earlier, this Chancellor finds that the Acting Commissioner is without authority to suspend or postpone a rate filing in effect as a result of the Section 4(d) deemer provision. This is not to say that, after hearing, the Acting Commissioner may not enter an appropriate order adjusting the rates. Indeed, this is the Commissioner's prerogative and duty.

This Chancellor grants stay of the February 11, 1987 Acting Insurance Commissioner's orders.[12] If unreasonable delay is encountered, appropriate action will be taken.

### ORDER IN 296 C.D. 1987 AND 297 C.D. 1987

After hearing, and upon consideration of petitioners' application for stay and/or supersedeas and respondents' answer thereto, it is ordered that said application is granted. The Acting Insurance Commissioner's order dated February 11, 1987, at Docket No. R87-1-10, is stayed pending review on the merits. Petitioners' motion for preliminary injunction is dismissed as moot.

The Chief Clerk is directed to list for argument respondents' preliminary objections and motion to quash appeal on Tuesday, April 21, 1987, before a panel of Judges sitting in Courtroom No. 1, Fifth Floor, South

---

[12] In Nos. 389 and 390 C.D. 1987, the Acting Commissioner seeks to have Travelers and Allstate enjoined from violating the orders of February 11, 1987. Since this Chancellor has granted a stay of those orders and finds that the insurance companies have not in bad faith violated those orders and promptly sought judicial review thereof, the preliminary injunctions requested are denied. Also, this Chancellor believes that because the Acting Insurance Commissioner will not likely prevail in this Court on the merits of the amended complaint in equity, the preliminary injunctions requested are denied for this reason as well.

Office Building, Harrisburg, PA. The Chief Clerk is also directed to establish immediately a briefing schedule.

ORDER IN 315 C.D. 1987 AND 316 C.D. 1987

After hearing, and upon consideration of petitioners' application for stay and/or supersedeas and respondents' answer thereto, it is ordered that said application is granted. The Acting Insurance Commissioner's order dated February 11, 1987, at Docket No. R87-1-11, is stayed pending review on the merits. Petitioners' motion for preliminary injunction is dismissed as moot.

The Chief Clerk is directed to list for argument respondents' preliminary objections and motion to quash appeal on Tuesday, April 21, 1987, before a panel of Judges sitting in Courtroom No. 1, Fifth Floor, South Office Building, Harrisburg, PA. The Chief Clerk is also directed to establish immediately a briefing schedule.

ORDER IN 348 C.D. 1987 AND 349 C.D. 1987

After hearing, and upon consideration of petitioners' application for stay and/or supersedeas and respondents' answer thereto, it is ordered that said application is granted. The Acting Insurance Commissioner's order dated February 11, 1987, at Docket No. R87-1-17, is stayed pending review on the merits. Petitioners' motion for preliminary injunction is dismissed as moot.

The Chief Clerk is directed to list for argument respondents' preliminary objections and motion to quash appeal on Tuesday, April 21, 1987, before a panel of Judges sitting in Courtroom No. 1, Fifth Floor, South Office Building, Harrisburg, PA. The Chief Clerk is also directed to establish immediately a briefing schedule.

ORDER IN 389 C.D. 1987 AND 390 C.D. 1987

After hearing, and upon consideration of plaintiffs' amended applications for preliminary injunctions, it is ordered that said applications are denied.