551 A.2d 1148

Pennsylvania Dental Association, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent

Submitted on briefs April 19, 1988, to President Judge CRUMLISH, JR., Judge McGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*Thomas A. Beckley*, with him, *John G. Milakovic, Beckley & Madden*, for petitioner.

*Arthur Selikoff*, Assistant Counsel, with him, *Terrance J. Fitzpatrick*, Chief of Litigation, and *Linda J. Wells*, Chief Counsel, for respondent.

*Thomas E. Wood, Keefer, Wood, Allen & Rahal*, for intervening respondent, Pennsylvania Blue Shield.

OPINION BY JUDGE MCGINLEY, December 20, 1988:

Pennsylvania Dental Association (PDA) appeals a decision of the Pennsylvania Insurance Department (Department) which denied PDA's Petition to Intervene in a statutory comment procedure under . Section 6329(b) of the Professional Health Service Plan Corporations Act (Act), 40 Pa. C. S. §6329(b). We affirm.

On July 13, 1987, the Medical Service Association of Pennsylvania, d/b/a Pennsylvania Blue Shield (Blue Shield) submitted Filing No. 7-W-1987 to the Department requesting the Department's approval of a two percent (2%) increase to dentists under Blue Shield's dental program pursuant to the Act. Simultaneously, Blue Shield Filing No. 6-W-1987 requested a two and one-half percent (2½%) payout increase to physicians under Blue Shield's medical surgical programs.

The Department published notices of the filings and of the opportunity to submit comments in the *Pennsylvania Bulletin* on August 1, 1987. 17 Pa.B. 3286. An administrative hearing on the filing was not scheduled.[1]

---

[1] October 1, 1987, letter from the Department to PDA's counsel, Supplemental Reproduced Record (b), at 16.

In letters to the Department dated August 31, 1987, PDA informed the Department of PDA's interest in assuring an adequate increase, and in obtaining fair treatment because of the discrepancy in the proposed payout for dentists as compared to the proposed payout to physicians. PDA requested that the Department require Blue Shield to produce for inspection ". . . all documents, studies, statistics and other information relevant to Filing No. 7-W-1987."[2] An identical request was made pertaining to Filing No. 6-W-1987, relating to physicians.[3] Accompanying the letters were written Petitions to Intervene in the rate proceedings and a Motion to Consolidate. PDA also sought a formal acknowledgment by the Department that PDA would have the right to review the requested documentation and submit its position to the Department before the Department acted upon the filings.

By letter dated September 11, 1987, the Department informed PDA that there would be no formal administrative proceeding on the filings and forwarded PDA requests to a Department actuary to be considered as comments as set forth in the *Pennsylvania Bulletin* notice.[4] No date was supplied. After a similar exchange of correspondence the PDA petitioned our Court for review.

Our scope of review is limited to a determination of whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

---

[2] August 31, 1987, letter from PDA's counsel to the Department, Reproduced Record (a), at 17a.

[3] *Id.* at 29a.

[4] September 11, 1987, letter from the Department to PDA's counsel at 40a-41a.

PDA contends the controversy is controlled by *Penn Dental I*.[5] It argues that *Penn Dental I* made it clear that PDA is entitled at least to "limited" intervention to the extent of obtaining the relevant statistics and submitting a petition after having reviewed same.

Blue Shield and the Department argue that: *Penn Dental I* held only that PDA was *eligible to request* intervention; and, that PDA's procedural rights are governed by the Act which permits the Department to proceed by publication in the *Pennsylvania Bulletin* of reasonable opportunity to submit written comments in all cases where there is no constitutional right to an oral hearing. The Department also argues that PDA does not have a constitutionally cognizable property interest in Blue Shield's proposals to increase reimbursement rates to dentists and physicians because PDA members are not required to become Blue Shield "participating doctors" and not all PDA members are Blue Shield affiliated dentists.

In *Penn Dental I*, our Supreme Court reviewed the submission of a similar PDA letter and Petition to Intervene in a scheduled administrative hearing. In *Penn Dental I*, PDA sought to intervene on two grounds, first to protect its members who render services to Blue Shield subscribers, and second, to protect its own interest as a purchaser of a Blue Shield plan for its employees. Relying on the due process clauses of the United States and Pennsylvania Constitutions PDA sought the underlying data for Blue Shield's submission to the Department.[6] At a public hearing PDA reiterated its

---

[5] *Pennsylvania Dental Association v. Insurance Department,* 512 Pa. 217, 516 A.2d 647 (1986).

[6] The filing requested that the Department review and approve an increase of five and one-half percent (5½%) in total Blue Shield payments. *Penn Dental I,* 512 Pa. at 220-221, 516 A.2d at 649.

request and need for the underlying data and interven-
tion. The Department, through its deputy insurance
commissioner, stated that the hearing was informal and
rejected intervention. Representatives of the Depart-
ment directed questions to Blue Shield representatives
and received comments from interested persons. PDA
chose not to participate. PDA did not appeal from the
denial of its Petition to Intervene within thirty days and
our Supreme Court held that failure to do so deprived
the Supreme and Commonwealth Courts of jurisdiction
but went on to say PDA had standing to seek interven-
tion in the proceeding pursuant to 1 Pa. Code
§35.28(a)(2);[7] and to appeal a Department denial.

PDA misinterprets our Supreme Court's holding in
*Penn Dental I* as meaning that PDA is absolutely enti-
tled to intervenor status. In *Penn Dental I*, the Depart-
ment held a hearing on the requested profile adjust-

---

[7] 1 Pa. Code §35.28, *Eligibility to Intervene*, provides:

(a) **Persons.** A petition to intervene may be filed by any
person claiming a right to intervene or an interest of such
nature that intervention is necessary or appropriate to the
administration of the statute under which the proceeding
is brought. Such right or interest may be any one of the
following:

(1) A right conferred by statute of the United States
or of this Commonwealth.

(2) An interest which may be directly affected and
which is not adequately represented by existing parties,
and as to which petitioners may be bound by the action of
the agency in the proceeding. The following may have such
an interest: consumers, customers, or other patrons served
by the applicant or respondent; holders of securities of the
applicant or respondent; employes of the applicant or re-
spondent; competitors of the applicant or respondent.

(3) Any other interest of such nature that participa-
tion of the petitioner may be in the public interest.

(b) **Commonwealth.** The Commonwealth or any officer or
agency thereof may intervene as of right in any proceeding
subject to the provisions of this part.

ments, while, in the case *sub judice,* no hearing was held. Furthermore, our Supreme Court held that under 1 Pa. Code §35.28 PDA had standing at least to *request* intervenor status, and to appeal when that request was denied. The Supreme Court held that PDA was eligible to intervene, but did not hold that the Department must grant intervention, as PDA asserts. As the Supreme Court noted in *Penn Dental I,* the grant or denial of a petition to intervene is within the sound discretion of the agency involved.[8]

In making its determination the Department relied upon the procedure set forth in Section 6329(b) of the Act:

> [e]very application for such approval shall be made to the Department in writing and shall be subject to the provisions of subsections (c) through (f) of Section 6102 of this Title (relating to certification of hospital plan corporations), *except that ,the department may substitute publication in the **Pennsylvania Bulletin** of notice of reasonable opportunity to submit written comments for publication of opportunity for hearing in any case where the right to an oral hearing is not conferred by the Constitution of the United States or the Constitution of Pennsylvania.* (Emphasis added.)

The Department argues PDA was not entitled to intervene or obtain the underlying data it requests because the exception at Section 6329(b) provides for a

---

[8] This Court has stated in the past that "our courts must proceed with caution where the judgment of an administrative body properly interpreting its own regulation .is at issue." *Norfolk and Western Railway v. Pennsylvania P.U.C.,* 489 Pa. 109, 413 A.2d 1037 (1980) quoting *Commonwealth v. Beck Electric Construction, Inc.,* 485 Pa. 604, 614, 403 A.2d 553, 558 (1979)).

non-hearing comment procedure.[9] A hearing is warranted only if the Blue Shield filings of proposed changes in rates of payments to dentists and physicians are subject to the due process provisions of the United States and Pennsylvania Constitutions.[10]

The requirements of due process are dependent upon the demands of the particular situation.[11] In order to determine the requirements of procedural due process, this Court must first determine if the interest asserted by the Association is protected by the due process clause. Next, we must balance the interest of the individual in procedural protections against the interest of the government in proceeding without protections and determine what due process requires. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d (1970); *Conestoga National Bank v. Patterson,* 442 Pa. 289, 272 A.2d 6 (1971).

---

[9] PDA does not deny that it received proper notice and an opportunity to comment.

[10] Section 1 of Amendment XIV to the United States Constitution states that:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 1 of Article I of the Pennsylvania Constitution states that:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

[11] *Pennsylvania Coal Mining Association v. Insurance Department,* 471 Pa. 437, 449, 370 A.2d 685, 689 (1977).

The Department and Blue Shield recognize that insureds in insurances rate regulation proceedings are entitled to the protections of procedural due process. In *Pennsylvania Coal Mining,* the Supreme Court reviewed a similar interest. Herein, PDA's expressed interest is to obtain fair treatment; in other words, to protect its members against arbitrary action. In *Pennsylvania Coal Mining,* the Supreme Court balanced the interests of the individual in procedural protections against the interests of the government in proceeding without protections. The Supreme Court went on to note that:

> The government activity here is regulation of insurance rates. The dependency of the Association on such regulation of insurance is clear. The coal mining companies which make up the Association are required to purchase black lung insurance to do business in Pennsylvania, and the rates that they must pay for such insurance forms a major part of their payroll costs. If the costs they must pay for insurance are excessive, they may not be able to compete with coal mining companies in other states, and thus may not be able to continue in business.[12]

While PDA's interests are similar to the interests of the coal operators they are also decidedly different in many respects. PDA members are not required to participate with Blue Shield or accept the fee structure approved by the Department. In addition, almost forty percent of PDA's members are not affiliated with Blue Shield. (*See* Petition of PDA to Intervene at 19a.) Further, the importance of changes in rates of payment to

---

[12] *Id.* at 448, 370 A.2d at 690.

PDA and its members, insofar as such changes affect their ability to remain in business, is also unknown.[13]

Under the circumstances of *Pennsyvlania Coal Mining* the Supreme Court concluded that due process required that the coal companies be given notice of the rate proposals and a reasonable opportunity to present *written* reasons why the rate increases should not be allowed or why a hearing should be held before the rates become effective. The Court did not believe that due process necessarily required a full hearing, allowing for confrontation and cross-examination of witnesses:

> While oral proceedings may be necessary for determinations likely to turn on witness credibility, written submissions may be adequate when economic or statistical questions are at issue (citations omitted). Moreover, unlike the opportunity to present written objections, a full hearing would entail extended delay, during which time the insurance carriers may be deprived of their interest in receiving adequate premiums.[14]

In the controversy *sub judice*, by notice published in the *Pennsylvania Bulletin*, August 1, 1987, PDA was advised that copies of the proposal would be available for public inspection, and written comments, suggestions, or objections were invited. 17 Pa. B. 3286. PDA contends that production of the underlying Blue Shield data is required for meaningful comment. We disagree.

---

[13] The Supreme Court held:

[t]he requirement that the coal mining companies purchase insurance, the importance of the insurance rates to their ability to remain in business, and the purposes of regulation by the Insurance Department create the combination of dependency and reliance which makes applicable the protections of procedural due process.

[14] *Id.* at 454, 370 A.2d at 693.

The proposed changes in rates in this case cannot become effective by deemed approval without an actual review and approval by the Department. In *Pennsylvania Coal Mining* the Supreme Court required only that copies of the rate filing be made available for comment; access to all available information and underlying data concerning the proposed rates was not required. The procedures afforded PDA comply with the requirements of procedural due process.

In *Pennsylvania Society of Oral and Maxillofacial Surgeons v. Insurance Commissioner,* 99 Pa. Commonwealth Ct. 439, 513 A.2d 1086 (1986), *aff'd per curiam,* 517 Pa. 308, 535 A.2d 1050 (1988) the Court held that denial by the Department of access to data other than that contained in the filing itself does not violate insureds' due process rights. The Court in *Pennsylvania Society of Oral and Maxillofacial Surgeons* relied upon *Pennsylvania Coal Mining* and held the Department's notice in the *Pennsylvania Bulletin* was adequate and that the opportunity to submit written submissions satisfied procedural due process. In affirming the Commissioner's order, the Court noted the different and more favorable position the petitioners were in, as opposed to the insureds in *Pennsylvania Coal Mining,* because the petitioners were not required to purchase the liability insurance they were contesting.[15]

---

[15] The Court stated:

> Moreover, the circumstances here are much different from, and more favorable to the insureds than, those of Pennsylvania Coal Mining Association. The petitioners here were not required to purchase liability insurance fixed in the first instance by an essentially private body composed of insurers. So far as this record shows, the petitioners might have purchased insurance from other insurers at better rates than those here contested. Moreover, the rates in this case did not become effective by deemed approval without notice to the petitioners.

*Pennsylvania Society of Oral and Maxillofacial Surgeons,* at 452, 513 A.2d at 1092.

Additionally, our Court recently addressed the issue of what procedural safeguards must be afforded a party where the Insurance Commissioner is statutorily required to "review" a determination in *The Pennsylvania Association of Home Health Agencies v. Insurance Department*, 119 Pa. Commonwealth Ct. 495, 542 A.2d 824 (1988). Therein this Court interpreted *Pennsylvania Coal Mining* as requiring: "(1) notice of a rate filing by publication in the *Pennsylvania Bulletin*; and (2) the opportunity to submit written comments to the Insurance Commissioner on a rate filing *before* the proposed rates may take effect. *Id*. at 453-454, 370 A.2d at 693."[16]

Adequate procedural safeguards have been afforded PDA. Accordingly, the order of the Department is affirmed.

### ORDER

AND NOW, December 20, 1988, the decision of the Pennsylvania Insurance Department, by letter dated September 11, 1987, is hereby affirmed.

Judge MACPHAIL did not participate in the decision in this case.

---

[16] *Pennsylvania Home Health Agencies* at 505-506, 542 A.2d at 829.